# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HERSHEY ENTERTAINMENT & )
RESORTS COMPANY, )
)                    CIVIL ACTION NO. 1 11-CV-11 59
        **Plaintiff** )
)
      **v.** )                    **JURY TRIAL DEMANDED**
)
RADISSON HOTELS )
INTERNATIONAL, INC., and )
PENN LODGE PARTNERS LP, )                    **FILED**
)                    HARRISBURG, PA
      **Defendants** )
                              JUN 1 7 2011

MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

## COMPLAINT

## I. JURISDICTION AND VENUE

1.    This action arises under the trademark laws of the United States and specifically the Lanham Act, 15 U.S.C. §§1051, et seq. (the "Lanham Act"). Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a) and (b).

2.    Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## II. **PARTIES**

3.     Plaintiff Hershey Entertainment & Resorts Company ("Hershey") is a corporation organized under the laws of the Commonwealth of Pennsylvania and maintains its headquarters and principal place of business at 27 West Chocolate Avenue, Hershey, Pennsylvania 17033.

4.     Upon information and belief, Defendant Radisson Hotels International, Inc. ("Radisson Hotels") is a Delaware corporation with its principal place of business at 12755 State Highway 55, Minneapolis, Minnesota 55441 and is doing business in the Commonwealth of Pennsylvania and within this judicial district.  It operates a chain of hotels worldwide and licenses to franchisees the right to operate hotels under the RADISSON brand.

5.     Upon information and belief, Defendant Penn Lodge Partners LP ("Penn Lodge") is a Pennsylvania corporation with its principal place of business at 1150 Camp Hill Bypass, Camp Hill, Pennsylvania 17011 and is doing business in the Commonwealth of Pennsylvania and within this judicial district. It is a Radisson Hotel franchisee and the owner and operator of the Radisson Hotel Harrisburg Hershey, f/k/a the Radisson Penn Harris Hotel & Convention Center, located in Camp Hill, Cumberland County, Pennsylvania.  Radisson Hotels and Penn Lodge are sometimes referred to collectively hereafter as "Radisson."

### III. **FACTS COMMON TO ALL COUNTS**

6.      This Complaint involves the federally registered trademark HERSHEY, Reg. No. 1,455,684 on the Principal Register of the United States Patent and Trademark Office ("USPTO"), used in conjunction with, among other services, hotel, lodging, and resort facility services; the provision and operation of conventions and visitors information center services; and amusement park and entertainment services (the "HERSHEY mark").  A true and correct copy of the certificate of registration of the federally registered HERSHEY mark is attached hereto as Exhibit "A."

7.      The federally registered HERSHEY mark is owned by Hershey Chocolate & Confectionery Corporation ("HCCC"), a subsidiary of The Hershey Company.

8.      HCCC licenses the HERSHEY mark exclusively to The Hershey Company.

9.      The Hershey Company licenses the HERSHEY mark to Hershey Entertainment & Resorts Company's wholly-owned subsidiary, MSH South Inc., which in turn sublicenses the HERSHEY mark to Hershey Entertainment & Resorts Company for its exclusive use in connection with, among other goods and services, hotel, lodging, and resort facility services; the provision of convention

and visitor information center services; and amusement park and entertainment services.

10. Hershey operates The Hotel Hershey, which is located at 100 Hotel Road, Hershey, Pennsylvania 17033.

11. Hershey operates the Hershey Lodge, which is located at 325 University Drive, Hershey, Pennsylvania 17033.

12. The HERSHEY mark has been in use continuously since 1911 in connection with hotel, lodging, and resort facility services.

13. The HERSHEY mark has become well known and famous and, based on its public recognition, has acquired distinctiveness for, among other things, Hershey's hotel, lodging, and resort facility services, as well as amusement park and entertainment services and the provision of convention and visitor information center services.

14. The HERSHEY mark was registered on the Principal Register of the USPTO on September 1, 1987, and is incontestable.

15. Hershey and its affiliates have spent substantial sums annually on advertising to promote, among other goods and services, the hotel, lodging, and resort facility services offered by it under the HERSHEY mark.

16. Hershey has used the HERSHEY mark to identify its services and to distinguish them from those of others by, among other things, prominently

4

displaying the HERSHEY mark in advertising and promotional materials for such services, whereby substantial goodwill and reputation in the mark has developed.

17.    In light of the distinctiveness of the HERSHEY mark, the duration and extent of Hershey's sales, marketing and use of the mark throughout the United States, and the registration of the HERSHEY mark, it is distinctive and famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

18.    Well after Hershey first obtained rights in, and began using the HERSHEY mark, Radisson commenced a promotional campaign featuring Hershey's amusement and entertainment attractions and services using various trademarks owned and used by Hershey.

19.    On September 29, 2004, November 3, 2004, December 22, 2004 and May 27, 2005, Hershey sent written notices to the General Manager of the Radisson Penn Harris Hotel & Convention Center, demanding that it remove all posters and displays containing Hershey's common law and registered trademarks, including HERSHEY, HERSHEYPARK, the Hershey Characters and the Cocoa & Chocolate Avenue Lamp Post Design, and the mark "Sweet Family Getaway," which is substantially similar to HCCC's SWEET GETAWAY trademark, and further cease and desist from using such marks in all promotional materials including any website.  Copies of those letters are attached hereto as Exhibit "B."

20.   Radisson Penn Harris Hotel & Convention Center did not respond to Hershey's letters.

21.   On or about July 28, 2005, the posters were no longer visible to the public on the property of the Radisson Penn Harris Hotel & Convention Center.

22.   On November 1, 2010, an email press release was issued by the Radisson Penn Harris Hotel & Convention Center's Director of Sales and Marketing to various local Chambers of Commerce, visitor centers, publications and other entities, announcing that the Radisson Penn Harris Hotel & Convention Center had changed its name to the "Radisson Hotel Harrisburg Hershey."

23.   Hershey sent written notice to the Radisson Penn Harris Hotel & Convention Center's General Manager and Director of Sales and Marketing on November 5, 2010, demanding that Radisson cease and desist from use of the HERSHEY mark in connection with its hotel operations and in all advertising and promotional materials, including its website(s).  A copy of that letter is attached hereto as Exhibit "C."

24.   Radisson's counsel substantively replied on December 9, 2010.  A copy of this letter is attached hereto as Exhibit "D."

25.   By letter dated January 11, 2011, Hershey reiterated its demand that Radisson refrain from any further use of the HERSHEY mark, noting that such use is primarily geographically misdescriptive, as the Radisson Hotel Harrisburg

Hershey is neither located in Harrisburg or Hershey, nor even located in the same county as the town of Hershey.  A copy of that letter is attached hereto as Exhibit "E."

26.     Despite Hershey's requests, Radisson did not cease and continues to use the HERSHEY mark in its trade name and in connection with advertisements for its Camp Hill hotel.

27.     At least as early as November 4, 2010, Radisson's website <www.radisson.com/camp-hill-hotel-pa-17011-3734/pacamphi> has advertised its Camp Hill hotel as the "Radisson Hotel Harrisburg Hershey."  A copy of the website is attached as Exhibit "F."

28.     Despite Radisson's claim that its Camp Hill hotel is "minutes away from Hershey's Chocolate World® and HersheyPark," its website makes clear that in fact the hotel is located 16 miles from Hershey's Chocolate World® in Hershey, Pennsylvania.  Copies of the relevant web pages are attached as Exhibit "G."

29.     By its own admission, Radisson's franchised property, the Radisson Hotel Harrisburg Hershey, is not located in Hershey, Township of Derry, Dauphin County, Pennsylvania.  While the hotel claims it "offers easy access to Hershey's Chocolate World® in Hershey," and is "near HersheyPark" and "convenient to . . . Hershey's Chocolate World® [and] HersheyPark," *see* Exhibit "G," guests must

7

travel more than 16 miles, through Harrisburg, Swatara Township and into Derry Township to Hershey, Pennsylvania to visit these attractions.

30.     Radisson is not now and never has not been authorized by Hershey or its affiliates to use the HERSHEY mark in connection with its hotel operations or in any manner whatsoever.

31.     The hotel services with which Radisson uses the trade name and trademark "Radisson Hotel Harrisburg Hershey" are identical to the hotel services offered and sold by Hershey for the past century under the famous HERSHEY mark.

32.     Radisson's use of "Hershey" in its trade name "Radisson Hotel Harrisburg Hershey" and commercial advertisements misrepresents the geographic origin of its services.

33.     Radisson's use of "Hershey" in connection with its hotel operations to describe the hotel's geographic location is false and/or misleading, and is likely to cause confusion, mistake or deception of purchasers and the consuming public as to the source or origin of its services.  Actual and potential purchasers and consumers, upon encountering Defendants' website and advertisements bearing the trade name "Radisson Hotel Harrisburg Hershey" are likely to mistakenly believe that Radisson's hotel services originate with, or are licensed, approved, or

sponsored by, or otherwise affiliated with or related to, Hershey and/or its licensees.

34.    In addition, Radisson's use of the trade name and trademark "Radisson Hotel Harrisburg Hershey" is likely to cause dilution of the famous HERSHEY mark in that, among other things, consumers will likely associate it with the famous HERSHEY mark, thereby impairing the distinctiveness of the HERSHEY mark and lessening the capacity of that mark to identify and distinguish the services of Hershey and its licensees.

35.    Radisson's acts are willful and intentional and are causing and will continue to cause damage and irreparable harm to Hershey and to its valuable reputation and goodwill with purchasers and consumers.

## IV. CAUSES OF ACTION

### COUNT I – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)

36.    Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.    This claim is for false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

38.    By its unauthorized use of the trade name and trademark "Radisson Hotel Harrisburg Hershey," Radisson has falsely designated the origin of its services, in violation of 15 U.S.C. §1125(a).

39.     On information and belief, Radisson's acts of false designation of origin have been done willfully and deliberately, and Radisson has profited and been unjustly enriched by sales that it would not otherwise have made but for its unlawful conduct.

40.     Radisson's acts described above have caused injury and damages to Hershey, have caused irreparable injury to Hershey's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Hershey has no adequate remedy at law.

## COUNT II – FALSE ADVERTISING UNDER 15 U.S.C. §1125(a)

41.     Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

42.     This claim is for false advertising in violation of 15 U.S.C. §1125(a).

43.     Radisson's claimed descriptions of fact on its website and promotional materials are false and misleading and materially misrepresent the nature, characteristics and geographic origin of Radisson's own services, which constitutes false advertising in violation of 15 U.S.C. §1125(a).

44.     Upon information and belief, Radisson's acts are willful and deliberate and have caused injury and damages to Hershey, and have caused irreparable injury to Hershey's goodwill and reputation, and, unless enjoined, will cause further irreparable injury, for which Hershey has no adequate remedy at law.

## COUNT III – TRADEMARK DILUTION UNDER 15 U.S.C. §1125(c)

45.     Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

46.     This claim is for trademark dilution pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of 2006.

47.     The HERSHEY mark is distinctive and famous within the meaning of 15 U.S.C. §1125(c), and was distinctive and famous prior to the date that Radisson commenced its wrongful conduct challenged herein.

48.     Radisson's conduct, as described above, is likely to dilute and is diluting the distinctive quality of the famous HERSHEY mark, in that Radisson's trade name and mark is likely to create and has created an association between Radisson's trade name and mark and the famous HERSHEY mark, which impairs the distinctiveness of the HERSHEY mark and lessens the capacity of that famous mark to identify and distinguish services marketed and sold by Hershey and its licensees under the HERSHEY mark.

49.     To the extent that Radisson's services are viewed as being less than satisfactory to consumers, Hershey's business reputation and goodwill and the reputation and goodwill of the famous HERSHEY mark are being and will be tarnished and injured.

11

50.    On information and belief, Radisson's acts of trademark dilution have been done willfully and deliberately, and Radisson has profited and been unjustly enriched by sales that it would not otherwise have made but for its unlawful conduct.

51.    Radisson's acts described above have caused injury to and have damaged Hershey's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Hershey has no adequate remedy at law.

## COUNT IV – INFRINGEMENT UNDER 15 U.S.C. §1114 OF FEDERALLY REGISTERED TRADEMARK

52.    Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

53.    This claim is for the infringement of a trademark registered in the USPTO, pursuant to 15 U.S.C. §1114(1)(a).

54.    The trade name and trademark "Radisson Hotel Harrisburg Hershey" used by Radisson is confusingly similar to, and a colorable imitation of the HERSHEY mark.

55.    Radisson's unauthorized use of its trade name and trademark "Radisson Hotel Harrisburg Hershey" is likely to cause confusion and mistake and to deceive the public as to the approval, sponsorship, license, source or origin of Radisson's services, all in violation of 15 U.S.C. §1114.

56.    On information and belief, Radisson's acts of trademark infringement have been done willfully and deliberately, and Radisson has profited and been unjustly enriched by sales that it would not otherwise have made but for its unlawful conduct.

57.    Radisson's willful and deliberate acts described above have caused injury and damages to Hershey, and have caused irreparable injury to Hershey's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Hershey has no adequate remedy at law.

## COUNT V – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

58.    Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

59.    This claim is for trademark infringement and deceptive trade practices in violation of the common law of the Commonwealth of Pennsylvania.

60.    Radisson's use of the trade name and trademark "Radisson Hotel Harrisburg Hershey" for its hotel operations constitutes common law trademark infringement, passing off, and deceptive trade practices in violation of common law.

61.    On information and belief, Radisson's acts of common law trademark infringement, passing off, and deceptive trade practices have been done willfully

and deliberately, and Radisson has profited and been unjustly enriched by sales that it would not otherwise have made but for its unlawful conduct.

62.     Radisson's acts described above have caused injury and damages to Hershey, and have caused irreparable injury to Hershey's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Hershey has no adequate remedy at law.

<u>**COUNT VI – TRADEMARK DILUTION UNDER**</u>
<u>**54 Pa. C.S.A. §1124**</u>

63.     Hershey repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

64.     This claim is for the dilution of trademark and injury to business or reputation under 54 Pa. Cons. Stat. Ann. §1124.

65.     The HERSHEY mark is famous in the Commonwealth of Pennsylvania within the meaning of 54 Pa. Cons. Stat. Ann. 4 §1124, and was famous prior to the date of Radisson's adoption and use of its "Radisson Hotel Harrisburg Hershey" trade name and trademark in connection with its hotel services.

66.     Radisson's conduct, as described above, is diluting and will dilute the distinctive quality of the famous HERSHEY mark, thereby lessening the capacity of the mark to identify and distinguish products and services offered by Hershey and its licensees under the HERSHEY mark.

67.     To the extent that Radisson's services are viewed as being less than satisfactory to consumers, Hershey's business reputation and goodwill and the reputation and goodwill of the famous HERSHEY mark are being and will be tarnished and injured.

68.     Radisson's acts described above have caused injury and damages to Hershey, and have caused irreparable injury to Hershey's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Hershey has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Hershey Entertainment & Resorts Company prays that this Court enter judgment against Radisson Hotels International, Inc. and Penn Lodge Partners LP, jointly and severally, as follows:

A.     Granting preliminary and permanent injunctive relief restraining Radisson, its officers, directors, agents, employees, servants, attorneys, successors, assigns and others controlling, controlled by or affiliated with Radisson and all those in privity or active concert or participation with any of the foregoing, and all those who receive actual notice by personal service or otherwise:

(1)     from using, in writing or in any media, the "Radisson Hotel Harrisburg Hershey" trade name and trademark or any name, mark or phrase

containing the HERSHEY mark used in connection with goods or services related to those with which Hershey uses the HERSHEY mark;

      (2)    from otherwise falsely advertising Radisson's services as affiliated with Hershey or the HERSHEY mark; and

      (3)    from otherwise competing unfairly with Plaintiffs;

      B.    Ordering that Radisson be adjudged to have violated Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§1114, 1125(a) and 1125(c), to have committed acts of false advertising, false designation of origin, trademark infringement and dilution, deceptive trade practices in violation of state common law and to have caused trademark dilution in violation of 54 Pa. Cons. Stat. Ann. §1124, and further ordering that the foregoing acts by Radisson be adjudged to have been done willfully and deliberately.

      C.    Ordering Radisson to pay for and cause to be disseminated corrective advertising to ameliorate the adverse consequences of Radisson's acts of false advertising, false designation of origin, trademark infringement and dilution and deceptive trade practices, the content, nature, form and extent of which is to be approved by Hershey and this Court;

      D.    Ordering an accounting of all gains, profits, savings and advantages realized by Radisson from its aforesaid acts of false advertising, false

designation of origin, trademark infringement and dilution and deceptive trade practices;

E.     Awarding such damages as Hershey shall establish in consequence of Radisson's aforesaid acts of false advertising, false designation of origin, trademark infringement and dilution and deceptive trade practices, together with appropriate interest thereon, including three times the amount found as actual damages by the trier of fact to properly compensate Hershey for its damages, pursuant to 15 U.S.C. §1117(a);

F.     Ordering Radisson to recall from all chains of distribution all promotional materials, advertisements, commercials, infomercials and other items, the dissemination by Radisson of which would violate the injunction herein granted;

G.     Ordering Radisson to deactivate all websites and deliver up for destruction any and all promotional materials, advertisements, commercials and other items in the possession, custody or control of Radisson which, if displayed or used, would violate the injunction herein granted;

H.     Ordering that, pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. §1116(a), Radisson shall serve upon Hershey within thirty (30) days after service on Radisson of an injunction, or such extended period as the Court may

direct, a report in writing under oath setting forth in detail the manner and form in which Radisson has complied with the injunction;

       I.    Awarding Hershey its costs and expenses of this action;

       J.    Declaring that this is an exceptional case, pursuant to 15 U.S.C. §1117, because of the willful and deliberate nature of Radisson's acts of false advertising, false designation of origin, trademark infringement and dilution and awarding Hershey its reasonable attorneys' fees; and

       K.    Granting such other and further relief as this Court may deem just and proper.

McNEES WALLACE & NURICK LLC


By   /s/ Harvey Freedenberg
     Harvey Freedenberg
     I.D. No. PA23152
     hfreeden@mwn.com
     Rebecca A. Finkenbinder
     I.D. No. PA90422
     rfinkenb@mwn.com
     100 Pine Street
     P.O. Box 1166
     Harrisburg, PA  17108-1166
     (717) 232-8000

     Attorneys for Plaintiff

Dated:  June 17, 2011

direct, a report in writing under oath setting forth in detail the manner and form in which Radisson has complied with the injunction;

      I.    Awarding Hershey its costs and expenses of this action;

      J.    Declaring that this is an exceptional case, pursuant to 15 U.S.C. §1117, because of the willful and deliberate nature of Radisson's acts of false advertising, false designation of origin, trademark infringement and dilution and awarding Hershey its reasonable attorneys' fees; and

      K.    Granting such other and further relief as this Court may deem just and proper.

                 McNEES WALLACE & NURICK LLC


           By_____

                 Harvey Freedenberg
                 I.D. No. PA23152
                 hfreeden@mwn.com
                 Rebecca A. Finkenbinder
                 I.D. No. PA90422
                 rfinkenb@mwn.com
                 100 Pine Street
                 P.O. Box 1166
                 Harrisburg, PA  17108-1166
                 (717) 232-8000

                 Attorneys for Plaintiff

Dated: June ____, 2011

# EXHIBIT A

Int. Cls.: 35, 37, 39, 40, 41 and 42

Prior U.S. Cls.: 100, 101, 103, 105, 106 and 107

Reg. No. 1,455,684

## United States Patent and Trademark Office

Registered Sep. 1, 1987

### SERVICE MARK
### PRINCIPAL REGISTER

## HERSHEY

HERSHEY FOODS CORPORATION (DELA-WARE CORPORATION)
100 MANSION ROAD EAST
HERSHEY, PA 17033

FOR: CHAMBER OF COMMERCE SERVICES, NAMELY, PROMOTING TRAVEL AND TOURISM IN THE VICINITY OF HERSHEY, PENNSYLVANIA, AND PROVIDING AND OPERATING CONVENTION CENTER FACILITIES , IN CLASS 35 (U.S. CL. 101).

FIRST USE 0–0–1974; IN COMMERCE 0–0–1974.

FOR: PROVIDING LAUNDRY AND DRY CLEANING SERVICES, SELF-SERVICE LAUNDROMAT SERVICES, MAINTENANCE AND SERVICING OF TEXTILE PRODUCTS FOR THE RESTAURANT, HOTEL AND INSTITUTIONAL/INDUSTRIAL TRADE, AND LANDSCAPE MAINTENANCE SERVICES, IN CLASS 37 (U.S. CL. 103).

FIRST USE 10–0–1908; IN COMMERCE 10–0–1908.

FOR: PROVIDING AND OPERATING PASSENGER AND GROUND SHUTTLE TRANSPORTATION SERVICES, IN CLASS 39 (U.S. CL. 105).

FIRST USE 6–0–1979; IN COMMERCE 6–0–1979.

FOR: TAILORING SERVICES, IN CLASS 40 (U.S. CL. 106).

FIRST USE 10–0–1908; IN COMMERCE 10–0–1908.

FOR: PROVIDING A CINEMA; A COUNTRY CLUB; GOLF COURSES; SPORTS CLUBS, ARENA AND STADIUM; A HORSERIDING STABLE; A TOURIST GARDEN; AND AMUSEMENT PARK SERVICES, IN CLASS 41 (U.S. CL. 107).

FIRST USE 4–0–1907; IN COMMERCE 4–0–1907.

FOR: PROVIDING AND OPERATING VISITORS INFORMATION CENTER SERVICES; DRUG STORE SERVICES; COMMISSARY SERVICES; CAMPGROUND SERVICES; NURSERY SERVICES; LANDSCAPES DESIGN SERVICES; HOTEL, LODGING AND RESORT FACILITIES; AND WHOLESALE DISTRIBUTORSHIP SERVICES IN THE FIELD OF TEXTILE PRODUCTS FOR THE RESTAURANT, HOTEL, AND INSTITUTIONAL/INDUSTRIAL TRADE, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 0–0–1911; IN COMMERCE 0–0–1911.

OWNER OF U.S. REG. NOS. 1,297,859, 1,302,878 AND OTHERS.

SEC. 2(F).

SER. NO. 602,960, FILED 6–9–1986.

SUSAN A. RICHARDS, EXAMINING ATTORNEY

# EXHIBIT B



**Edna L. Jenkins**
*Trademarks/Litigation*
*Administrator*

P.O. Box 860
300 Park Boulevard
Hershey, PA 17033

tel: (717) 534-3163
fax: (717) 534-8991

e-mail: ejenkins@HersheyPA.com

September 29, 2004

Mr. Tom Dickert
General Manager
RADISSON PENN HARRIS HOTEL & CONVENTION CENTER
1150 Camp Hill Bypass
Camp Hill, PA 17011

RE: HERSHEY trademarks and "Sweet Family Getaway"

Dear Mr. Dickert:

Our Company owns and operates HERSHEYPARK®, THE HOTEL HERSHEY®, HERSHEY® Lodge & Convention Center, as well as several other area businesses. We have the exclusive right to use the famous HERSHEY® trademarks for a variety of services, including amusement parks, hotel, lodging and resort services under a license agreement with Hershey Chocolate & Confectionery Company.

Our attention has been directed to the enclosed copy of the "STAY Hershey" page printed from your website and a poster hanging in the lobby of your convention center. These uses constitute the unauthorized use of the following trademarks to promote your lodging facilities, including: HERSHEYPARK, HERSHEY'S product characters, and the Cocoa & Chocolate Avenue lamp post design.

Additionally, we have established an extensive family of trademarks using the word SWEET or SWEETEST for a variety of services, including hotel packages since the late 1980's. We have been using SWEET GETAWAY since at least as early as January 2003, and believe your use of "Sweet Family Getaway" for identical services, namely a hotel package, is an infringement of our trademark rights and is likely to cause confusion in the minds of consumers.

Further, the artwork used on the poster displayed in your convention center is a violation of our copyrights. Our brochures contain the appropriate copyright notice and our website states, "...no photographs, images or other materials from our site may be downloaded, transmitted, distributed or used in any way, including commercial use."

We have no objection to you referencing your close proximity to Hershey, Pennsylvania and Hershey area attractions. However, we request that you respect our trademark and other intellectual property rights and consistently reference HERSHEYPARK as one word not two.

Finally, we must insist upon the immediate removal of the poster on display, and your prompt written assurances that all uses of the trademarks mentioned above have been discontinued in your advertisements and websites.

Thank you in advance for your cooperation.

Sincerely,

*Edna L. Jenkins*

Edna L. Jenkins

Enclosure

c: L. Duquette, Esq.  Hershey Foods Corp.
   R. Campbell- MSH South Inc.



**Language: English** ▼   **Take me to...** ▼

**Make a Reservation** :  **Event Request** :  **View Hotel Map** :
**Contact Us**

Welcome to www.radisson.com : Please **sign in**

**My Account** ›
*personalize your page*

### Radisson Penn Harris Hotel & Convention Center

Hotel Overview

Specials

Rooms & Amenities

Hotel Services

Meeting & Events

Dining

Area Information

1150 Camp Hill Bypass, Camp Hill Pennsylvania 17011, US
**Reservations:** (800) 333-3333
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

🗺 Directions/Map

🖨 Print t

📧 Email

+📑 Add to

**CURRENT WEATHER**
for **Camp Hill Pennsylvania**

Friday
Rain. Cloudy. Cool.
56°F/48°F

3-day forecast





**Come experience what 100% guest satisfaction
really means:**

The award winning Radisson Penn Harris Hotel welcomes
travelers with splendid character and historic charm. Our
exceptional staff will accommodate your every desire. We
are centrally located in a quiet suburban area, which
provides convenient access to Harrisburg, Hershey,
Lancaster and Gettysburg. Central Pennsylvania's premier
area attractions are all within easy reach.

Experience the difference when you step inside our guest
rooms and suites designed with Colonial furnishings to
make you feel right at home. Our Business Class rooms
feature added convenience for the traveling executive
including built-in computer data ports, coffeemakers, full
breakfast, USA Today newspaper and free in-room movies.

**The Radisson Penn Harris Hotel & Convention Center
has received the 2003 President's Award.** For the
second year in a row, Radisson Worldwide has recognized
the Penn Harris Hotel for providing an exceptional
commitment to guest service and has ranked this hotel as
among the best of the best within Radisson.

**Check Rates & Av**

Check-in Date:
19 ▼ Nov 2004

Check-out Date:
20 ▼ Nov 2004

Adults        Ch
1 ▼           0

Promotional Code (o

More options...


**STA**
Pamper yoursel
Penn Harris Ho

**STAY Holi**
Holiday family fu
Penn Ha


**Destinat**
Your personal g

places to eat, se
Harr



**PRESIDENT'S
AWARD**

Make a Reservation :  Event Request :  View Hotel Map :  Contact Us :  My Account :  Privacy Policy :  Terms and Conditions

© 2003 Radisson Hotels & Resorts. All Rights Reserved.



**Edna L. Jenkins**
*Trademarks/Litigation*
*Administrator*

tel: (717) 534-3163
fax: (717) 534-8991

P.O. Box 860
300 Park Boulevard
Hershey, PA 17033

e-mail: ejenkins@HersheyPA.com

November 3, 2004

Mr. Tom Dickert
General Manager
RADISSON PENN HARRIS HOTEL & CONVENTION CENTER
1150 Camp Hill Bypass
Camp Hill, PA  17011

      RE:  HERSHEY trademarks and "Sweet Family Getaway"

Dear Mr. Dickert:

On September 29, 2004, a letter was addressed to your attention regarding a poster displayed in the lobby and the use of various HERSHEY trademarks to promote your hotel and lodging facilities.  (A copy of the letter is attached for your reference.)  To date, we have received no response from you.  We are renewing our demand for the immediate removal of the poster and receiving your written assurances that all of the uses of the trademarks mentioned in the prior letter have been discontinued in your websites and advertisements.

Thank you for your anticipated cooperation.

              Sincerely,

              Edna L. Jenkins

c:  L. Duquette, Esq.—Hershey Foods Corp.
    R. Campbell—MSH South Inc.



**Edna L. Jenkins**
*Trademarks/Litigation*
*Administrator*

tel: (717) 534-3163
fax: (717) 534-8991

P.O. Box 860
300 Park Boulevard
Hershey, PA 17033

e-mail: ejenkins@HersheyPA.com

### HERSHEY
ENTERTAINMENT & RESORTS

December 22, 2004

Mr. Tom Dickert
General Manager
RADISSON PENN HARRIS HOTEL & CONVENTION CENTER
1150 Camp Hill Bypass
Camp Hill, PA  17011

      Re:  HERSHEY trademarks and "Sweet Family Getaway"

Dear Mr. Dickert:

On September 29th and November 3rd, letters were directed to your attention regarding the Radisson Penn Harris Hotel & Convention Center's use of our trademarks on websites and advertisements promoting your hotel and lodging facilities.  This matter is of the utmost concern as the continued use of HERSHEY trademarks to promote your hotel and lodging services is likely to lead to confusion in the minds of the public and an infringement of our trademark rights.

A recent perusal of your website has revealed the revisions to your website and the removal of the "STAY Hershey" and "Sweet Family Getaways" hotel packages.  While the revision to the website is appreciated, we are puzzled by the lack of communication regarding these revisions and the assurances we requested that the offending poster has been removed.  Please provide the written assurances as requested as we do not wish to become embroiled in litigation to protect our intellectual property rights.

      Sincerely,

      /s/ Edna Jenkins

      Edna L. Jenkins

c:  L. Duquette, Esq.—Hershey Foods Corp.
   R. Campbell—MSH South Inc.

ioc:  Jim Miles
      Kim Schaller



Franklin A. Miles, Jr.
*Vice President,*
*Secretary, and*
*General Counsel*

tel: (717) 534-3392
fax: (717) 534-8991

P.O. Box 860
300 Park Boulevard
Hershey, PA 17033

e-mail: fmiles@HersheyPA.com

May 27, 2005

**VIA CERTIFIED MAIL**

Mr. Tom Dickert
General Manager
Radisson Penn Harris Hotel
  & Convention Center
1150 Camp Hill Bypass
Camp Hill, PA  17011

Re:  HERSHEY Trademarks and "Sweet Family Getaway"

Dear Mr. Dickert:

Reference is made to three letters from our Trademarks/Litigation Administrator, copies of which are enclosed.  Please respond as requested within ten (10) days of the date of this letter.

Sincerely,

Franklin A. Miles, Jr.

Enclosures

c:  Edna L. Jenkins

# EXHIBIT C



**Edna L. Jenkins** Pa.C.P.
*Manager, Legal Affairs/*
*Senior Paralegal*

tel: (717) 534-3163
fax: (717) 534-3887

P.O. Box 860
27 W. Chocolate Avenue
Hershey, PA  17033

e-mail:  ejenkins@HersheyPA.com

November 5, 2010

General Manager                              sent via  e-mail and regular mail
RADISSON HOTEL
1150 Camp Hill Bypass
Camp Hill, PA  17011

Sandy Sipe, CMP                              sent via e-mail and regular mail
Director of Sales and Marketing
RADISSON HOTEL
1150 Camp Hill Bypass
Camp Hill, PA  17011

      Re:  HERSHEY Trademark

Dear Sir or Madam and Ms. Sipe:

On Wednesday of this week we became aware of the recent change of your hotel name from "Radisson Penn Harris Hotel & Convention Center" to "Radisson Hotel Harrisburg Hershey." Copies of pages from your website are enclosed for your reference.  Reference is also made to the email sent by Ms. Sipe as your Director of Sales and Marketing, reproduced below.

> **From:** Sandy Sipe [mailto:ssipe@radpenn.com]
> **Sent:** Monday, November 01, 2010 4:02 PM
> **To:** [Addressees omitted]
> **Subject:** Radisson Name Change
>
> Dear Partner:
>
> We would like to info [sic] you that the Radisson Penn Harris Hotel & Convention Center has changed its name to the **Radisson Hotel Harrisburg Hershey.**
>
> Please update our information on your website and/or publication.
>
> If you have any questions I can be reached at 717-433-9737 or ssipe@radpenn.com <mailto:ssipe@radpenn.com>.
>
> Sincerely,

Sandy Sipe, CMP
Director of Sales and Marketing

Sandy A. Sipe, CMP | Director of Sales and Marketing | **Radisson Hotel Harrisburg Hershey**
Sales Office Direct Phone: 717-433-9737 | Hotel Phone: 717-763-7117 | Fax: 717-763-7120
1150 Camp Hill Bypass | Camp Hill, PA 17011 | www.radisson.com/camphillpa | ssipe@radpenn.com
**Best Service. Highest Quality. Great Price.**
**Celebrate Thanksgiving with us from 11am to 2pm on November 25.**
**Call 717-433-9737 to Reserve your Table.**

Follow us on Twitter at: <http://twitter.com/RadPennHarris>
http://www.facebook.com/RadissonPennHarrisHotel

Under a License Agreement with Hershey Chocolate & Confectionery Company, Hershey Entertainment & Resorts Company has exclusive rights to use the famous HERSHEY® trademark to promote hotel, lodging, resort and related services, among many other goods and services. HERSHEY has been registered in the United States Patent & Trademark Office (Registration No. 1,455,684), and that registration has become incontestable.

Your unauthorized use of HERSHEY with identical services, namely hotels, creates the impression that Hershey Chocolate & Confectionery and/or Hershey Entertainment & Resorts and its businesses are associated with your hotel operation, and such use is likely to cause confusion in the minds of consumers. Please provide your prompt written assurances that you have ceased using the HERSHEY trademark, and that your website, printed materials, advertising, and any other materials where the HERSHEY trademark is used without our authorization, have been or will be corrected within 10 days of the date of this letter.

Thank you, in advance, for your cooperation.

Sincerely,

Edna L. Jenkins

c:. L. Duquette, Esq.- The Hershey Company
   B. Peoples- MSH South Inc.

**Radisson Hotel Harrisburg Hershey**

1150 Camp Hill Bypass, Camp Hill Pennsylvania
17011, US
**Reservations:** 1-800-395-7046 US/Canada Toll-free
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

Map &
Directions
Photo Gallery

Print Page

Send to a Friend

Add to my favorites
list

**Special Offers**



**Camp Hill
Vacation Packages**

Overview   Rooms   Services   Groups &
Meetings   Dining   Local
Area   **Specials**   Weddings



**Camp Hill, PA Civil
War Package**

**Camp Hill, PA Civil War Package**
Stay at the Radisson while visiting the Civil War Museum



**Fedrooms Program
Member Serving US
Federal Government
Travelers**



Rooms & Amenities

**100% non-smoking facility**

**Spacious, Pet Friendly Harrisburg, PA Hotel Rooms**
The Radisson Hotel Harrisburg Hershey features two levels of
beautifully decorated guest rooms including six suites. Many of our
rooms include Sleep Number® beds, which adjust to your level of
comfort. In-room amenities include complimentary wireless Internet
access, cable television and coffee makers. Traveling with a pet?
We also offer pet friendly accommodations.



Bed in Suite

Rates &
Availability
Rooms &
Amenities
  ◊ The Business
  Class Guest
  Room

  ◊ Sleep
  Number® Beds

  ◊ Suites

  ◊ Short Stature
  Kit

**Our Harrisburg, PA hotel rooms include the following
amenities:**

- Clock radio
- Coffee maker
- Cribs available upon request
- Dual phone lines and voicemail
- Hair dryer
- Handicap accessible rooms available
- High-speed, wireless Internet access - complimentary
- Iron/ironing board
- Pets allowed
- Remote-controlled color television with cable and pay-per-
  view movies
- Rollaway beds available upon request
- Room service available 6:30am-11pm
- Self-controlled heating and cooling
- Short stature accessibility kit available
- Sleep Number® beds available
- Smoke-free atmosphere
- Suites available
- *USA Today* delivered to your door Mon-Fri
- Work desk and chair



Presidential Suite



Guest Room

Standard rooms at our Harrisburg, PA hotel offer a choice of one
king-sized bed or two double beds. Many of our guest rooms offer
Sleep Number® beds.

**Business Class**
Our Business Class guest rooms offer access to upgraded
amenities, services and benefits that help you work more efficiently.



Groups & Meetings

**Book Our Camp Hill Hotel's Meeting Facilities**
At the Radisson Hotel Harrisburg Hershey, we offer more than
30,000 square feet of exceptional meeting and banquet space. Our
Camp Hill hotel's 15,000-square-foot Grand Ballroom is central
Pennsylvania's largest column-free oval ballroom, and our 16
meeting rooms can host events of up to 1,200 people. Our
professional catering and event planning staff is available to help
oversee every detail of your meeting.



Presidential Suite

Rates &
Availability
Groups &
Meetings
○ Event
Request

○ Banquet
Menus

○ Meeting
Facility
Floorplan

**The Radisson Hotel Harrisburg Hershey offers the following
meeting amenities:**

- Audio/visual equipment available for rent, including LCD
  projector
- Catering available
- High-speed, hard-wired Internet access available for $100 for
  the first computer and $75 for each additional computer per
  day
- High-speed, wireless Internet access available for $50 per
  computer per day



Keystone E

For more information on our Camp Hill hotel's meeting facilities,
please contact our sales and catering staff at (717) 433-9737 or
sales@radpenn.com.



Grand Ballroom

# EXHIBIT D

DuaneMorris·

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

SAMUEL W. APICELLI
DIRECT DIAL: 215.979.1255
PERSONAL FAX: 215.689.0827
E-MAIL: swapicelli@duanemorris.com

www.duanemorris.com

December 9, 2010

VIA E-MAIL
VIA REGULAR MAIL

Edna L. Jenkins, Pa.C.P.
Manager, Legal Affairs/Senior Paralegal
Hershey Entertainment & Resorts
Company
P.O. Box 860
27 W. Chocolate Avenue
Hershey, PA  17033

   Re:   **Radisson Hotel Harrisburg Hershey**

Dear Ms. Jenkins:

   We have considered your client's allegations regarding our client's use of the term "Hershey" and find them without merit. The Radisson Hotel Harrisburg Hershey uses the word "Hershey" to identify its geographic location within central Pennsylvania. Radisson Hotels, of course, wants the public to recognize the identity and location of its facilities throughout the world. Thus, a naming protocol has been adopted so as to provide this vital information to the public, e.g., Radisson Plaza-Warwick Hotel Philadelphia; Radisson Hotel Valley Forge; Radisson Lexington Hotel New York; Radisson Hotel New Rochelle; Radisson Hotel Newark-Carteret; Radisson Hotel Piscataway-Somerset; Radisson Hotel Freehold; Radisson Hotel Schaumburg; Radisson Suite Hotel Rancho Bernardo; Radisson Hotel Boston; Radisson Hotel and Suites Chelmsford-Lowell; Radisson Hotel Nashua; Radisson Hotel Plymouth Harbor; Radisson Hotel San Jose Airport, etc. In each case the RADISSON brand is associated with the general geographic location of the hotel in question. This is irrefutable evidence that RADISSON is the brand for the facilities, and is always followed by a geographic descriptor.

   No one can be restricted from use of an indicator of geographic origin. The term "Hershey" is such an indicator of geographic origin. A drive across the PA Turnpike shows a number of signs for visitors to exit at Hershey. . . The Sweetest *Place* on Earth. Advertisements and promotions for visits to or vacations in the city of Hershey can be found at a different URL, www.hersheypa.com, also owned by the Entertainment & Resorts Company.

DuaneMorris

Edna L. Jenkins, Pa.C.P.
December 9, 2010
Page 2

With regard to your reference to an alleged License Agreement between your client and Hershey Chocolate & Confectionery Corporation, there is no question Hershey Chocolate & Confectionery Corporation owns thousands of applications and registrations for its widely recognized HERSHEY'S mark. But, HERSHEY'S is substantially different from the geographic description "Hershey." The distinction between HERSHEY'S the trademark and Hershey the place is clearly illustrated in the company's own electronic and print marketing and advertising, and product packaging. Print and television advertisements for the company's chocolate and confectionery products refer to the HERSHEY'S brand, as does the packaging for those products. The company's website is located at the URL www.hersheys.com (we note that www.hershey.com is owned by the software company Hershey Systems), and the brand referenced throughout is HERSHEY'S:



There is no room for doubt, that HERSHEY'S is among the most famous of trademarks. Likewise, it is a unity that the HERSHEY'S brand has been extended from its identification of chocolate candy to a great variety of goods and services. Hershey, however, also is a destination, a place on the map. Hershey has a U.S. Postal Service zip code. Numerous businesses in Hershey and the surrounding central Pennsylvania region incorporate "Hershey" in their trade names and trademarks, to signify to consumers the geographic origin of their goods or services.

Hershey is not exclusively available to any entity as a geographic descriptor for goods or services originating in or near Hershey, Pennsylvania. It is well settled law that there is a right to inform consumers of the geographic origin of products or services. Indeed, descriptive geographical terms are in the "public domain" in the sense that every seller should have the right to inform customers of the geographic origin of its products or services. This premise is codified in the Federal Lanham Act at Section 33(b)(4), 15 U.S.C.A. 1115(b)(4) and has been recognized and upheld by Federal Courts throughout the U.S.

The U.S. Patent and Trademark Office (PTO) has long recognized the geographic significance of "Hershey." Indeed, several of Hershey Chocolate and Confectionery Corporation's trademark applications and registrations that cover the term "Hershey" (not *Hershey's*) claim acquired distinctiveness under Trademark Act Section 2(f) as a bases for registration. For example, the registrations for HERSHEY CENTER FOR HEALTH & NUTRITION, HERSHEY CENTER FOR HEALTH & NUTRITION & Design, THE HERSHEY EXPERIENCE, M.S. HERSHEY, HERSHEY ENTERTAINMENT & RESORTS (& Design), HERSHEY THE SWEETEST PLACE ON EARTH all claim Section 2(f) as to "Hershey."

Edna L. Jenkins, Pa.C.P.
December 9, 2010
Page 3

DuaneMorris

It makes sense to us that the strategy behind the Section 2(f) claims is to overcome anticipated objections to registration of these marks based on a U.S. Trademark Office allegation of geographic descriptiveness, which the Office historically raises with respect to marks that incorporate "HERSHEY." In a trademark registration issued in 1985 to the Antique Automobile Club of America, Inc. (U.S. Reg. No. 1,355,852), the Office required the registrant to disclaim the "Hershey" which formed part of the mark AACA LIBRARY & RESEARCH CENTER ANTIQUE AUTOMOBILE CLUB OF AMERICA, HERSHEY, PENNSYLVANIA U.S.A. FOUNDED 1981 DURYEA. As recently as August 26, 2010, the PTO in an application to register the mark HERSHEY FINANCIAL ADVISERS, LLC – DYNAMIC ASSET ALLOCATION SYSTEM (HFA-DAAS) (U.S. App. No. 85/034,153), required Applicant, located in Lancaster, Pennsylvania, to relinquish any claim to the exclusive right to use "Hershey" because: "HERSHEY is primarily geographically descriptive of Hershey, Pennsylvania."

The Radisson Hotel Harrisburg Hershey prefers to focus its resources on servicing its customers and expanding its business, and does not knowingly infringe the valid and actual property rights of others. Based upon the foregoing, we consider your client's concerns satisfied, and this matter at an end.

Sincerely,

Samuel W. Apricelli

SWA:kak

cc:    Franklin A. Miles, Jr. Esquire

# EXHIBIT E

Franklin A. Miles, Jr.
*Vice President,*
*Secretary, and*
*General Counsel*

tel: (717) 534-3392
fax: (717) 534-8991

P.O. Box 860
27 W. Chocolate Avenue
Hershey, PA 17033
e-mail: fmiles@HersheyPA.com



# HERSHEY

ENTERTAINMENT & RESORTS®

**SENT VIA EMAIL TO**
swapicelli@duanemorris.com

January 11, 2011

Samuel W. Apicelli, Esq.
Duane Morris
30 South 17th Street
Philadelphia, PA 19103-4196

Re: HERSHEY® Trademark Infringement

Dear Mr. Apicelli:

We are in receipt of your letter dated December 9, 2010. We completely disagree with your assessment, and renew our request that your client cease its unauthorized, infringing and misleading use of HERSHEY. As noted in our earlier correspondence:

> Hershey Entertainment & Resorts Company has exclusive rights to use the famous HERSHEY® trademark to promote hotel, lodging, resort and related services, among many other goods and services. HERSHEY has been registered in the United States Patent & Trademark Office (Registration No. 1,455,684), and that registration has become incontestable.

> Your [client's] unauthorized use of HERSHEY with identical services, namely hotels, creates the impression that Hershey Chocolate & Confectionery and/or Hershey Entertainment & Resorts and its businesses are associated with your hotel operation, and such use is likely to cause confusion in the minds of consumers.

Your protestations notwithstanding, we **do** have the exclusive right to use HERSHEY with hotel, lodging, resort and related services. Moreover, to the extent that Hershey also denotes the geographic area largely owned and developed by Milton S. Hershey, namely, the Township of Derry, Dauphin County, Pennsylvania, your client's use is most decidedly **not** geographic in nature. At a minimum, such use is primarily geographically deceptively misdescriptive, as its hotel is located in Camp Hill, Pennsylvania. Indeed, the facility is situated in an entirely different county (Cumberland) than Hershey/Derry Township (Dauphin).

January 11, 2011
Page 2

Your client's own promotional materials, many of which are reproduced as part of this letter, are an admission that Radisson recognizes that its property is not located in Hershey. As you'll note from the highlighted text of your client's own web site, the property is variously described as being "in Harrisburg" or "in Camp Hill." (The use of "Harrisburg" is also deceptively misdescriptive, but that is not the focus of our attention.)

The following may be found at http://www.radisson.com/camp-hill-hotel-pa-17011-3734/pacamphi (note the use of camp-hill-hotel-pa-17011-3734" as the address):

### Welcome to Our Harrisburg Hotel
One of the most convenient hotels in Harrisburg, PA, the Radisson Hotel Harrisburg Hershey is located in Camp Hill, near downtown Harrisburg and Harrisburg International Airport, and offers easy access to Hershey's Chocolate World® in Hershey, as well as fun recreational facilities at City Island, a popular Harrisburg park. Our Harrisburg hotel's guests can relax in our outdoor pool, work out in our Fitness Center, stay connected to the office with our Business Center and enjoy on-site dining. Choose our Harrisburg, PA hotel and experience what 100% guest satisfaction really means.

### Harrisburg Hotel In Camp Hill near HersheyPark
The Radisson is located on Route 15, six miles north of the Pennsylvania Turnpike, and provides easy access to Harrisburg International Airport (HIA), area attractions, shopping, parks and more. Our suburban Harrisburg hotel is also convenient to downtown, Hershey's Chocolate World®, HersheyPark and five public, 18-hole golf courses. We are also less than an hour from Gettysburg and Lancaster Amish Country.

Clicking through to Map & Directions on your client's site leads to the information below. As you'll again note from the highlighting, none of the geographic descriptors mention "Hershey." Moreover, the final exits from roads leading to the Camp Hill property are identified as "Camp Hill," "Gettysburg" or "Enola/Marysville"; "Hershey" is nowhere to be found. Indeed, one of the direction choices written by your client is for those travelling "From Hershey." This alone demonstrates that your client recognizes that its property is not located "in Hershey."

### Radisson Hotel Harrisburg Hershey

1150 Camp Hill Bypass
Camp Hill 17011-3734
Reservations: 1-800-395-7046
Phone: (717) 763-7117
FAX: (717) 763-4518

Hotel Info      Room Rates

Radisson Penn Harris Hotel and Convention Center
717-763-7117

January 11, 2011
Page 3

## DIRECTIONS

| From Harrisburg International Airport and Lancaster | Travel I-283 West (toward Harrisburg) to I-83 South to Exit 41A (Camp Hill - Route 581 West). Then take Exit 5A (Camp Hill - Route 15 North). Follow Route 15 North for approximately 2 miles and the Radisson is on the left. |
|---|---|
| From Philadelphia Area | Travel I-76 West (PA Turnpike) to Exit 236 (Gettysburg). Go North on Route 15 for approximately 6 miles, the Radisson is on the left. |
| From Pittsburgh Area | Travel I-76 East (PA Turnpike) to Exit 236 (Gettysburg). Go North on Route 15 for approximately 6 miles, the Radisson is on the left. |
| From New York City | From the George Washington Bridge, take the Holland or Lincoln Tunnels, follow the New Jersey Turnpike South to Exit 14 (I-78 West). Then take I-81 South and get off at Exit 65 (Enola/Marysville). Travel Routes 11/15 South for approximately 5 miles. At the 5th traffic light, turn right onto Walnut Street. Continue straight through two more traffic lights and the Radisson is on the right. |
| From Upstate New York, North Eastern Pennsylvania and Canada | From the Pennsylvania border travel I-81 South and take Exit 65 (Enola/Marysville). Travel Routes 11/15 South for about 5 miles. At the 5th traffic light, turn right onto Walnut Street. Continue straight through two more traffic lights and Radisson will be on the right. |
| From Allentown & Bethlehem | Travel I-78 West to I-81 South and take Exit 65 (Enola/Marysville). Travel Routes 11/15 South for approximately 5 miles. At the 5th traffic light, turn right onto Walnut Street. Continue straight through two more traffic lights and Radisson will be on the right. |
| From York, Baltimore and Washington D.C. | From the Pennsylvania border, travel I-83 North to Exit 41A (Camp Hill - Route 581 West) then take Exit 5A (Camp Hill - Route 15 North). Follow Route 15 North for approximately 2 miles and the Radisson is on the left. |
| From State College | Travel Route 322 to Routes 11/15 South. At the 5th traffic light, turn right onto Walnut Street. Go straight for two more traffic lights and the Radisson is on the right. |
| From Hershey | Travel Route 322 West to I-83 South. Take Exit 41A (Camp Hill - Route 581 West). Then take Exit 5A (Camp Hill - Route 15 North). Follow Route 15 North for approximately 2 miles and the Radisson is on the left. |

Print This Page                                                                 Powered by 10Best

Your own letter also provides several additional examples that support our position, not your client's.

- On page one you state that your client uses "Hershey" "to identify its geographic location within central Pennsylvania." (Emphasis supplied.) "[C]entral Pennsylvania" does indeed describe the geographic area in which Camp Hill and other towns (including Harrisburg) are located. We have no objection to your client's use of this identifier as it is both accurate and a geographic designator. Hershey is neither.

- Also in the first paragraph, you reference a "naming protocol" purportedly employed by Radisson to convey "vital information to the public." The fact that this alleged protocol does not allow your client to ignore the trademark status of HERSHEY is discussed in detail below. Moreover, the manner in which your client otherwise carries out its own "protocol" belies the contention that "Radisson Hotel Harrisburg Hershey" is consistent with the protocol. Examining a sampling of property listings found at www.radisson.com/hotels/us reveals that the "Radisson Hotel Rosedale" has a Rosedale address, the "Radisson Plaza Hotel

Minneapolis" has a Minneapolis address, the Radisson Suite Hotel St. Cloud" has a St. Cloud address, the "Radisson Hotel Hyannis" has a Hyannis address, the "Radisson Hotel Schaumberg" has a Schaumberg (not Chicago) address, and so on. It would seem, then, that the "vital information" is either the actual town in which the property is located or, as in the case of the "Radisson Hotel Valley Forge," which has a King of Prussia address, the final exit from a major road, in this case the "Valley Forge" exit from the Pennsylvania Turnpike.

As noted earlier, there is no "Hershey" exit which leads to the Camp Hill hotel. In fact, per a Google® Maps search Hershey is a full 17.5 miles from Camp Hill. Harrisburg, which is located *between* Camp Hill and Hershey, is 3.7 miles east of Camp Hill, while Hershey is 14.4 miles east of Harrisburg. There is simply no plausible argument that inclusion of "Hershey" in your client's name is information that the public needs to locate the Camp Hill facility.

- Again on page one, you mention "signs" on the Pennsylvania Turnpike for HERSHEY THE SWEETEST PLACE ON EARTH®, which you correctly identify as a registered trademark on page two of your letter. (It has been assigned U.S. Registration No. 2,788,853, and, like HERSHEY® for hotel services, has also become incontestable.) The characterization of our advertisements as "signs" is disingenuous; it is obvious to travelers that these are ads to promote goods and services associated with the trademarks appearing in the ads. Clearly, this is not directional signage placed by the Pennsylvania Turnpike, as you try to infer.

  Additionally, from your bolding of the word "Place," it would appear that you think this somehow bolsters your contention that your client can use HERSHEY. It does not. The word "place" is not to be separated from the trademark as a whole, nor does it stand apart from the rest of the mark, as you have indicated. It is part of the trademark HERSHEY THE SWEETEST PLACE ON EARTH, which we have used for more than two decades in connection with a host of services, including hotels and lodging. If anything, this is yet another mark with which your client's use of HERSHEY is likely to cause confusion.

- On page three you cite a registration and an application from the USPTO. With respect to the registration, one would have expected the PTO to require a disclaimer since the HERSHEY, PENNSYLVANIA, U.S.A. component of the mark is obviously a geographic usage. This is of no assistance to your client, as the applicant in that instance was physically located within the confines of Derry Township (its address on the application is 510 West Governor Road, Hershey, PA 17033). The hotel in Camp Hill is not. The applicant's agreement to disclaim has no bearing on the issue at hand.

  In the case of HERSHEY FINANCIAL ADVISORS, LLC, the reason that you found nothing more than an application is that, following a cease and desist letter sent on behalf of the Hershey Trust Company, the applicant agreed to withdraw

January 11, 2011
Page 5

its application and to cease using HERSHEY. Indeed, a simple search of PTO records shows that the current status of this application is "Abandoned: Applicant's express request." The Hershey Trust Company, as the Trustee for the Milton Hershey School Trust, is the sole shareholder of our company, and thus its interests in protecting the HERSHEY mark are unified with our own.

- Your analysis of Section 2(f), which runs on pages two and three, is tortured, to say the least. Marks which have been registered under 2(f) have become "distinctive" of the applicant's goods and services, and are entitled to protection like any other registered trademark. Moreover, as the HERSHEY registrations for hotel services (and for many other goods and services) have attained incontestable status, any assertion that HERSHEY is primarily geographically descriptive is foreclosed.

An objective tribunal has considered similar arguments and rejected them in a domain name dispute in which we were successful: Hershey Entertainment & Resorts Company v. Darien Hospitality Group, Claim Number FA0701000888090 (March 20, 2007). A copy of the decision ("Decision") is included with this letter. In that case, Respondent Darien, like Radisson, had adopted a "strategy [that] is based on attracting business through Internet search terms targeted to each hotel specific geographic market area." Decision at pp. 3-4. After commenting that, although "Hershey" is both a place name and a trademark, the Panel found that "Respondent is not free to ignore the trademark status of the word." Decision at p. 16. The Panel determined that Respondent had registered and used hersheyhotels.com in bad faith, and ordered the transfer of the name to us. Decision at p. 17.

Apropos of the Decision's bad faith finding, this is not the first time that your client has endeavored to trade off of the recognition and good will associated with the HERSHEY mark. In 2004 and 2005 we were compelled to send correspondence to the General Manager of the Camp Hill Radisson hotel about infringing uses of HERSHEY and SWEET on the hotel's web site and at the property itself. We subsequently confirmed that the infringing activities had stopped. The fact that your client persists in its attempts to trade off of and cause confusion with the HERSHEY® trademark is clear evidence of its intentional and willful infringement of this famous mark, and your client is liable for the exceptional damages provided by the Lanham Act.

In closing, we trust that, upon reconsideration, your client will agree to our original request. We ask that you provide written confirmation within seven (7) days of the date of this letter.

Sincerely,

Franklin A. Miles, Jr.

Enclosure



NATIONAL ARBITRATION
FORUM

# Notice of Decision

Attached is the decision of the Panel in:

**Hershey Entertainment & Resorts Company v Darien Hospitality Group,**
**FA0701000888090**

Decision:  Transferred

## PARTIES' RIGHTS

- Complainant's rights – If the Respondent prevailed in this UDRP action, the Complainant is not barred from seeking other relief in court as provided by law.  The timeliness of such action is governed by the applicable law.

- Respondent's rights – If the Complainant prevailed and the domain name has been ordered cancelled or transferred, the Registrar will wait 10 days before taking action.  Within that period, the Respondent may begin a lawsuit, in an appropriate jurisdiction, against the Complainant.  The Respondent must properly notify the Registrar of such legal action.  ICANN Policy ¶ 4(k).

## REGISTRAR'S RESPONSIBILITIES

If the Panel's decision was cancellation or transfer of the domain name(s), the Registrar will wait 10 days before implementing the decision.  ICANN Policy ¶ 4(k).  The cancellation/transfer (if ordered) will take place unless appropriate legal action is commenced against the Complainant within the 10-day period.

Official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) must be sent to the Registrar to prove that legal action has been commenced.  Then, the Registrar will not implement the Panel's decision, and will take no further action, until the following is received:

    (i)     satisfactory evidence of a resolution between the parties;

    (ii)    satisfactory evidence that the lawsuit has been dismissed or withdrawn; or

    (iii)   a copy of a court order dismissing the lawsuit or ordering that the party does not have the right to continue to use the domain name.

NOTE: This document should not be construed as legal advice.  If you need legal advice, consult an attorney in your jurisdiction.



**NATIONAL ARBITRATION FORUM**

**DECISION**

Hershey Entertainment & Resorts Company v. Darien Hospitality Group
Claim Number: FA0701000888090

## PARTIES

Complainant is **Hershey Entertainment & Resorts Company** ("Complainant"), represented by **Rebecca A. Finkenbinder**, of **McNees Wallace & Nurick LLC**, 100 Pine Street, P.O. Box 1166, Harrisburg, PA 17108-1166. Respondent is **Darien Hospitality Group** ("Respondent"), represented by **Edward R. Scofield**, of **Zeldes, Needle & Cooper**, 1000 Lafayette Blvd, P.O. Box 1740, Bridgeport, CT 06601-1740.

## REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is **<hersheyhotels.com>**, registered with **Network Solutions, Inc.**

## PANEL

The undersigned certify that they have acted independently and impartially and to the best of their knowledge have no known conflicts in serving as Panelists in this proceeding.

## PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum electronically on January 12, 2007; the National Arbitration Forum received a hard copy of the Complaint on January 15, 2007.

On January 12, 2007, Network Solutions, Inc. confirmed by e-mail to the National Arbitration Forum that the **<hersheyhotels.com>** domain name is registered with Network Solutions, Inc. and that the Respondent is the current registrant of the name. Network Solutions, Inc. has verified that Respondent is bound by the Network Solutions, Inc. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On January 17, 2007, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of February 6, 2007 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@hersheyhotels.com by e-mail.

On January 23, 2007, Respondent requested, pursuant to Supplemental Rule 6, an extension of time to respond to the Complaint. On January 24, 2007, the National Arbitration Forum, with Complainant's consent, granted Respondent an extension and set a new deadline of February 16, 2007 for a filing of a Response.

A timely Response was received and determined to be complete on February 16, 2007.

A timely Additional Submission from Complainant was received on February 21, 2007 and deemed complete pursuant to Supplemental Rule 7.

A timely Additional Submission from Respondent was received on February 26, 2007 and deemed complete pursuant to Supplemental Rule 7.

On March 6, 2007, pursuant to Respondent's request to have the dispute decided by a three-member Panel, the National Arbitration Forum appointed G. Gervaise Davis, III, the Honorable Nelson A. Diaz, and Kendall C. Reed as Panelists.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. Complainant

The Complainant licenses the federally registered trademark, HERSHEY, Registration number 1,455,684, and the common-law trademarks, HERSHEY and THE HOTEL HERSHEY, all in connection with hotel, lodging and resort facilities, among other goods and services. The federal registration issued on September 1, 1987. The common-law trademark HERSHEY began being used in commerce in connection with hotel, lodging and resort facilities services in 1911. The common–law trademark HOTEL HERSHEY began being used in commerce in 1933 in connection with hotel, lodging and resort facilities, and more specifically in connection with a hotel located 100 Hotel Road, Hershey, PA 17033. THE HOTEL HERSHEY is world renowned, one of America's landmark hotels, listed as a member of Historic Hotels of America, is currently ranked in the top 100 Americas Best Golf Resorts, as reported by Golf Magazine, and is the recipient of both the Mobile Four-Star Award and at the AAA Four-Diamond Award.

The aforesaid Hotel is known by its guests and the general public by the following trademarks: THE HOTEL HERSHEY, HERSHEY HOTEL and HOTEL HERSHEY. Complainant's long, continuous and pervasive use of the HERSHEY trademark in connection with its famous hotel means that such trademarks are well known.

Complainant has registered and maintains the following domain names: <hersheyhotel.com>, <hotelhershey.com>, both registered on January 25, 1999, and <thehotelhershey.com>, registered on July 26, 2002.

Respondent's domain name is virtually identical and confusingly similar to Complainant's trademarks. Less than four months after Complainant registered its domain name <hersheyhotel.com>, Respondent registered the domain name **<hersheyhotels.com>** without the knowledge or consent of Complainant. It is clear from Respondent's home page that Respondent operates a Howard Johnson hotel at 473 Eisenhower Blvd., Harrisburg, Pennsylvania. These services are identical to the services offered by Complainant.

Respondent's domain name is confusingly similar to Complainant's trademarks because Respondents domain name wholly incorporates complainant's famous HERSHEY trademark. Further Respondent adds the letter "s," which is an inconsequential edition. Furthermore, the plural form of a word does not create a distinct mark.

Moreover, the fact that the website Respondent operates at the domain name offers identical and competing services making the likelihood of confusion between the domain name and Complainant's trademarks even greater.

Respondent has no rights or legitimate interests in the domain name. Respondent is not affiliated with Complainant, and Respondent has never registered a business entity or fictitious name for "Hershey Hotels" in Pennsylvania. Therefore, Respondent is not commonly known by the domain name. Rather, Respondent is known by the brand name, Howard Johnson. Further, Respondent's domain name is geographically deceptively misdescriptive in that the first word in the domain name is the geographic term, "hershey." However, the services offered and sold on Respondent's domain name are available at a hotel located in Harrisburg, Pennsylvania, not Hershey. Further still, Respondent registered its domain name with either actual or constructive notice of Complainant's trademarks, both the registered mark in the common-law marks.

Respondent registered and uses its domain name in bad faith.  In light of the notoriety of Complainant's famous marks, Respondent had actual or constructive knowledge thereof at the time Respondent registered its domain name. Further, Respondent's registration of a domain name that contains a geographically deceptively misdescriptive term, Hershey, is further evidence of its bad faith because Respondent's Hotel, in fact, is not located in the town of Hershey, Pennsylvania.

B.  Respondent

Respondent is a hotel ownership and management company, founded in 1994.  It has operated as many as six hotels, and now owns and operates four hotels in Connecticut, Pennsylvania and Maryland and employs over 150 people.

In 1997 Respondent embarked on an Internet strategy as a means for promoting its own hotels.  Through umbrella sites (<businesstraveler.com> and <funtravel.com>) prospective customers are offered links to Respondent's hotels home pages, enabling customers to book online, enhancing Respondent's business.  In the case of the individual hotels, the strategy is based on attracting business through Internet search terms targeted

to each hotel specific geographic market area. For example, in the case of Howard Johnson hotel in Harrisburg, Pennsylvania, in 1999 and 2000 Respondent registered or acquired the domain names **<hersheyhotels.com>**, <harrisburghotels.com> and <lancasterhotels.com>. A similar approach was taken with other properties. For example, for the Darien, Connecticut property, Respondent registered the names <darienhotels.com> and <stamfordhotels.com>. This geographic-based Internet marketing approach is a key element in the Respondent's business plan.

The burden is on Complainant to prove each of the three requirements of Policy paragraph 4(a), and the Complainant has not met its burden.

Complainant's rights in the trademark HERSHEY and THE HOTEL HERSHEY are not threatened by Respondent's usage; the domain name is not confusingly similar. Complaint goes to some length to establish the goodwill associated with its mark for its flagship hotel, THE HOTEL HERSHEY. However, Complainant fails to come to grips with the fact that Hershey is a geographic place name, a municipality in the state of Pennsylvania, which draws visitors to many area hotel properties and that the terms "hershey" and "hershey hotels" are terms in widespread use. For example, a Google search for the term "hershey" returns 1,500,000 hits, while the term "hershey hotels" returns more than 1,300,000 hits. Notably, the entry for Respondent's site shows up as the fifth site in the sequence for unpaid ads and is clearly labeled as relating to the Howard Johnson's hotel, while Complainant's site shows up as the first site. Many of these results point the way to the geographic and generally descriptive use of the term, particularly in the travel and hospitality industry. There are goods and services unaffiliated with Complainant that make use of the word "hershey," including hotel properties located within Hershey itself as well as hotels in neighboring municipalities, including Harrisburg, which use the word "hershey" in their advertising and promotion.

The use of the plural in Respondent's domain name, as well as the reversal of the words "hershey" and "hotel" do in fact operate to distinguish **<hersheyhotels.com>** from THE HOTEL HERSHEY because the domain name is merely descriptive of Respondent's business and is thus not confusingly similar and is unlikely to cause confusion with Complainant's business. Further, Respondent owns a hotel in the Hershey market, and the expression "hershey hotels" merely describes a category, and does not impinge on the specific property rights of the Complainant in THE HOTEL HERSHEY. Further, the two hotels operate in completely different economic markets, and as such there is no likelihood of confusion.

Given the status of "hershey" as a geographic place, Complainant cannot establish that it has, based on the registration of HERSHEY or use of THE HOTEL HERSHEY, the right to exclude all usage of the general term "hershey hotels." At the very minimum, there is a legitimate dispute on this question of trademark law; and the existence of a legitimate dispute concerning the likelihood of confusion can make a case inappropriate for resolution under the Policy. This alone would be sufficient to deny a transfer.

Respondent has rights and legitimate interests in the domain name. As a hotel company, Respondent's business is to sell hotel rooms to business and leisure travelers. Beginning in early 1997, Respondent perceived the need to promote the hotels it owned and managed via the Internet. To that end, it conducted brainstorming sessions and hired a Web developer. In July 1997, Respondent registered the domain name <businesstraveler.com> to further that interest. There followed a period of demonstrable preparations, including work with web developers, before Respondent began actively using in 1999 and its family domain names, including <hersheyhotels.com> "in connection with a *bona fide* offering of goods and services." Thus by 1999, the two of umbrella sites, <businesstraveler.com> and <funtraveler.com>, and the family of individual hotels sites, were fully operative and available to Respondent's target customers. Respondent did not receive notice of the dispute until nearly 5 years later, in 2004.

The linchpin of Complainant's argument is that Respondent has no legitimate interests is that "it does not own or operate a hotel in Hershey, Pennsylvania." This contention is belied by uncontestable facts about the geographic region and the manner in which hotels in the area, including Respondent, market themselves. The relevant market for hotels extends beyond the border of Hershey itself to the surrounding area. Local maps, guidebooks, yellow pages listings, and marketing materials resoundingly support this conclusion. And indeed, Complainant's own hotel referral service refers prospective visitors to its attractions as far away as Allentown, an hour's drive.

In this case is distinguishable from those cases where a Respondent has used as its domain name the exact name of a competitor's establishment. Here the domain name <hersheyhotels.com.> is not <thehotelhershey.com>. Rather, the domain name <hersheyhotels.com> is capable of a referring to any number of hotels in the area.

There can be no question but that Respondent has established a valid "motivation" or "connection" to Hershey, Pennsylvania.

In addition, there can be no doubt that Respondent's use of the site has at all times been "in connection with a *bona fide* offering of goods and services." This is a case of a fully functioning business, with brick and mortar hotel buildings and 150 employees, which properly registered a geographically-based domain name to promote that very business on the Internet.

Complainant has not proven bad faith on the part of Respondent. Complainant does not allege that Respondent registered its domain name for the purpose of selling it. Complainant does not allege that Respondent registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name. Respondent did not register its mark "primarily for the purpose of disrupting the business of a competitor. Complainant appears to rely on this aspect of the rule. But the claim is plainly off the mark. First, and critically, from 1999, and even to this day, the parties are not actually in direct competition for hotel guests. The two properties appeal to completely different target audiences. No one can mistake

the Howard Johnson for THE HOTEL HERSHEY, which offers a spa, golf courses, restaurants and extensive conference facilities. The Complainant itself acknowledges as much by excluding the entire class of hotels to which Howard Johnson belongs (AAA "two diamonds") from if its referral service. In addition, Complainant has not shown that Respondent intended to "misleadingly direct consumers or tarnish the trademark or service mark at issue." Responded specifically constructed its Internet search terms in such a way as to avoid misleading anyone. Further, Respondent's actual purpose was to register a geographically-based name, consistent with its overall Internet marketing strategy, in furtherance of its own legitimate business interests. This is not bad faith, even where a trademark is registered.

Respondent did not seek to create likelihood of confusion to attract users. The nature of the term "hershey hotels" eliminates any likelihood of confusion. Complainant claims that constructive notice of its trademark rights gives rise to the finding of bad faith. This is simply not so. The presence of constructive notice does not mean that the domain name was registered in bad faith. Such notice is not enumerated in section 4(b) of the Policy as an independent ground for such a finding. Moreover, even those panels which have cited it as a "factor" have not relied on that point exclusively, but have relied on other factors not present here.

C. Complainant's Additional Submission

That the trademark HERSHEY is famous is indisputable; there are 732 trademark registrations in a 113 countries consisting solely of or containing the word "hershey" or "hershey's." Based on such expansive use, the HERSHEY mark has become famous and is recognized worldwide.

Respondent's domain name is confusingly similar to Hershey's famous trademark. The domain name contains the famous HERSHEY trademark and, with the exception of the word "the," the famous trademark, THE HOTEL HERSHEY. Respondent's mere inclusion of the letter "s" does not obviate confusion. In addition to Respondent's use of identical terms, the domain name is confusingly similar to Complainant's trademarks. Respondent asserts that the reversal of the words "hershey" and "hotel" is sufficient to distinguish <hersheyhotels.com> from THE HOTEL HERSHEY. However, such reversal is not a mere "creative rework of the syntax," considering Complainant's hotel is referred to and has become known as, HERSHEY HOTEL. Complainant specifically registered the domain name <hersheyhotel.com> and <hotelhershey.com> in January 1999 because such names are used interchangeably to identify and refer to its famous hotel.

Respondent has no rights or legitimate interests in the domain name. Respondent premises its entire argument upon the fallacious and disingenuous notion that "hershey" is geographically descriptive and that "geographic place names enjoy less protection than other marks." After misleading the reader by stating that Hershey is a municipality, Respondent grudgingly concedes, as it must, that "Hershey" is not "technically" a

geographic place name, as a geographically defined municipality in which Complainant's hotel is located is Derry Township. Thus, Respondent's argument fails at the outset.

Even assuming, *arguendo*, that "hershey" is used by some to connote a geographic location that amounts to the boundaries of Derry Township, the fact remains that Respondent's hotel is located in the geographic locale known as Harrisburg, which itself is a city and municipality. Indeed, Respondent admits that it operates a hotel in Harrisburg, Pennsylvania. It does not operate a hotel in Derry Township/Hershey. Respondent's use of the word "hershey" to promote a Harrisburg hotel, therefore, is geographically deceptively misdescriptive, which and in and of itself is sufficient evidence that Respondent has no rights or legitimate interests in the domain name.

Respondent adopted the domain name intending to trade off Complainant's fame and goodwill. Respondent contends that it embarked on an Internet marketing strategy in 1997, and thereafter made "demonstrable preparations" before it registered and used the domain name in 1999. However, Respondent did not select the domain name until 1999; therefore, any "demonstrable preparations" were not for the domain name itself, but rather for the "generic" domain names <businesstraveler.com> and <funtravel.com>.

Most telling of all is the chronology of Respondent's actions, and the manner in which it treats its other domain names. Respondent registered its domain name on May 3, 1999, 66 years after use began of the now famous THE HOTEL HERSHEY mark, 12 years after Respondent had constructive notice of the famous and registered HERSHEY mark, four months after Complainant registered <hersheyhotel.com> domain name, and long after the public started referring to Complainant's hotel as HERSHEY HOTEL. It was not until much later, in 2000 that Respondent maintained other domain names supposedly considered part of Respondent's geographic marketing strategy, well after it began maintaining **<hersheyhotels.com>**. If Respondent were not seeking to exploit the famous HERSHEY marks, hits on **<hersheyhotels.com>** and <lancasterhotels.com> would be redirected to <harrisburghotel.com>, which is geographically descriptive of the area in which Respondent's Howard Johnson hotel is actually located. Indeed, this is the manner in which Internet browsers linking to Respondent's <stamfordhotels.com> domain name are automatically redirect to <darienhotels.com>, i.e., the domain name that accurately contains the name of the city in which Darien, Connecticut hotel is located.

The multitude of metatags and keywords that Respondent selected for the domain name and which focus, almost exclusively, on "hershey," exemplify Respondents intend to attract Internet users to its website for commercial gain. Such use increases the likelihood that Internet browsers searching for a hotel in Hershey will be lured to Respondent's website. In short, if Respondent had a legitimate business strategy based on attracting customers through Internet search terms targeted to "each hotels specific geographic market area," it would utilize its <harrisburghotels.com> domain name. Instead, it has built its strategy around the use of its domain name which includes the famous HERSHEY mark and which is virtually identical to the domain name which Complainant registered four months earlier.

Respondent had actual and constructive notice that its use of the domain name would violate Complainant's rights. Respondent is misleading when it contends that it first learned of Complainant's concerns five years after Respondent registered its domain name. In point of fact, Respondent had actual and constructive notice of this dispute well before 2004. Respondent was asked by Complainant in 2002 to cease use of the famous HERSHEY mark, as well as other trademarks owned by Complainant's affiliates, and specifically to cease use of "hershey" as part of its Web page address. Six months later, Respondent was sent another cease and desist letter to which was attached printouts of Respondent's website reflecting its unauthorized use of a plethora of word and design marks owned by Complainant. Respondent's primary focus in 2002, as it is today, is to create confusion in the minds of consumers by appearing to have a close association with Complainant in and to trade-off Complainants goodwill. This certainly is not a *bona fide* offering of goods and services.

Respondent's domain name was registered and is used in bad faith. Respondent and Complainant both sell hotel rooms to business and leisure travelers. Respondent acknowledges that the market for hotel rooms for the millions of guests that visit Hershey attractions extend through central Pennsylvania. For Respondent to then assert the parties are not actually in direct competition for hotel guests is patently absurd. Respondent's use of its domain name therefore, will disrupt Complainant's business.

Respondent's "reasonable explanation" for its registration and use of its domain name, that it operates a hotel routinely frequented travelers to Hershey. However, Respondent cannot evade a bad faith claim by relying on its so-called Internet marketing strategy, which is in fact a transparent attempt to use the famous HERSHEY mark without authorization.

D. Respondent's Additional Submission

Complainants argument that it's "Hershey" marked is famous, is irrelevant.

Complainant has ignored entirely Respondent's discussion of the significant differences between its luxury hotel properties and a budget Howard Johnson hotel. While maintaining that there is but a single economic market for all hotel guests (such that its deluxe property supposedly competes with Respondent's economy brand), Complainant simultaneously contends that there are multiple geographic micro-markets such that Respondent's hotel, located minutes away from Hershey in eastern Harrisburg, can have no legitimate interest in attracting hotel guests visiting Hershey attractions.

Complainant has not shown why it is relevant that the HESHEY trademark is famous. Respondent has not contested this point. The question here is whether the domain name is confusingly similar to HERSHEY or THE HOTEL HERSHEY, and Complainant is not entitled to any special consideration on this score because its mark is an especially famous one. Like any complainant, it must still prove that all three of the elements of improper registration are present in order to prevail. Likewise, Respondent is entitled to

the full protection of the policy and to a level Internet playing field, regardless of the commercial influence of the other party.

Complainant has failed to show that Respondent's domain name is confusingly similar to Complainant's famous trademarks. Complainant's entire argument on this point is that because the domain name in question contains the word "hershey" and "hotel" it must be confusingly similar to Complainant's marks. However, the mere inclusion of trademarked words does not constitute confusing similarity. Further, Complainant has not put forward any evidence that anyone has actually been confused by this particular domain name, whereas Respondent has put forward evidence that many people have visited this particular domain name and found exactly what they were looking for. Indeed, consumers searching for "hershey hotels" (i.e. , hotels in the Hershey area) using a search engine will obtain a list that features Complainant's own site as the first unpaid entry, with Respondent's property very conspicuously identified in the title line as a Howard Johnson's property. Taken together with the different target markets for these properties, there is simply no likelihood of confusing Respondent's Howard Johnson's property with any of Complainant's properties.

Complainant has failed to show that Respondent has no rights or legitimate interest in the domain name. The Complainant fails to come to grips with the numerous examples attached to the response of businesses unaffiliated with Complainant, including even the local chamber of commerce, guidebooks, and the like, which identify themselves with the geographic location of "Hershey." The term has official as well as popular currency. The U.S. Postal Service operate a "Hershey Post Office," and the U.S. Geological Survey publishes a map of "the Hershey quadrangle." Moreover, Derry Township itself gives its own address as Hershey, just as the Complainant does on its website, which specifically refers to Hershey as a town, complete with a map of "Hershey, PA" and directions. Even Complainant's own website <hershey.pa.com> with the state abbreviation built in, emphasizes the geographic identity. Incredibly, Complainant itself has acknowledged a geographic usage as permissible. Even had it not, the issue of whether a given term is a geographic place name is a matter of public consensus and popular usage, as evinced by exactly such examples; it is not for Complainant unilaterally to decide. Likewise it is the public that determines, according to the conventions of the marketplace, what constitutes the wider Hershey area in commercial usage. The Respondent has put forward specific evidence to show that popular usage of the geographic name Hershey includes Harrisburg, particularly in the hotel market, and even that Complainant itself treats distant cities as part of the greater Hershey area.

Complainant has not produced evidence that Respondent adopted the domain name to trade on Complainant's goodwill, rather than to indicate its location in the Hershey area. The entirety of the Complainant's discussion of this point is built on the assumption that any reference to the Hershey area is a nefarious attempt to trade on the goodwill of Complainant. Rather Respondent is using the domain name as a legitimate resource for budget travelers to the greater Hershey area. Respondent uses **<hersheyhotels.com>** in addition to <harrisburgehotels.com> because it in fact serves travelers to both Hershey and Harrisburg.

Complainant has not shown that the domain name violates Complainant's right, so Complainant cannot show that Respondent has notice of a violation. The Complainant attempts to show that Respondent had actual and constructive notice of this dispute. In other words, Complainant is claiming that merely because it contested Respondent's use of the domain name, Respondent has notice that the name in fact violates Complainant's rights. Circular insistence cannot substitute for evidence or disguise the fact that the Complainant has not actually shown confusing similarity – a logical and equitable prerequisite for attempting to show notice of that similarity. Moreover, Complainant's submission of correspondence from 2002 is unavailing since the parties' actual focus at the time was on the pictorial trademark representation of the Respondent's site, which matter was then resolved.

Complainant has failed to show the domain name was registered and is used in bad faith. Nothing in the Complainant's second filing even attempts to controvert Respondent's evidence that its 2-star Howard Johnson is not in competition with Complainant's luxury hotel properties, and indeed could not compete with them even if it wised to.

## FINDINGS

The Complainant licenses the federally registered trademark, HERSHEY, Registration number 1,455,684, and the common-law trademarks, HERSHEY and THE HOTEL HERSHEY, all in connection with hotel, lodging and resort facilities, among other goods and services. The federal registration issued on September 1, 1987. The common-law trademark HERSHEY began being used in commerce in connection with hotel, lodging and resort facilities services in 1911. The common-law trademark THE HOTEL HERSHEY began being used in commerce in 1933 in connection with hotel, lodging and resort facilities.

Complainant has registered the <hersheyhotel.com> domain name.

Respondent is not affiliated with Complainant, and Respondent has never registered a business entity or fictitious name for "Hershey Hotels" in Pennsylvania.

Complainant did not give permission or license to Respondent to use any of Complainant's trademarks.

Respondent is a hotel ownership and management company, founded in 1994. It has operated as many as six hotels, and now owns and operates four hotels in Connecticut, Maryland, and a Howard Johnson hotel at 473 Eisenhower Blvd., Harrisburg, Pennsylvania.

In 1997 Respondent embarked on an Internet strategy as a means for promoting its own hotels. Through umbrella sites (<businesstraveler.com> and <funtravel.com>) prospective customers are offered links to Respondent's hotels home pages, enabling customers to book online, enhancing Respondent's business. In the case of the individual

hotels, the strategy is based on attracting business through Internet search terms targeted to each hotel specific geographic market area. For example, in the case of Howard Johnson hotel in Harrisburg, Pennsylvania, in 1999 and 2000 Respondent registered or acquired the domain names **<hersheyhotels.com>**, <harrisburghotels.com> and <lancasterhotels.com>. A similar approach was taken with other properties. For example, for the Darien, Connecticut property, Respondent registered the names <darienhotels.com> and <stamfordhotels.com>. By 1999, the two umbrella sites, <businesstraveler.com> and <funtraveler.com>, and the family of individual hotels sites, were fully operative and available to Respondent's target customers.

Respondent and Complainant both sell hotel rooms to business and leisure travelers. Respondent operates a AAA 2-star hotel and its target market is budget travelers. Complainant operates a luxury hotel.

The area of Harrisburg, Pennsylvania in which Respondent's hotel is located is geographically very close to Hershey/Derry Township, Respondent's Howard Johnson hotel being only approximately ten minutes away form Hershey/Derry Township.

## DISCUSSION

Paragraph 15(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(i) the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(ii) the Respondent has no rights or legitimate interests in respect of the domain name; and
(iii) the domain name has been registered and is being used in bad faith.

## Policy Section 4(a)(i) - Identical and/or Confusingly Similar

This is a threshold issue. Additionally, this threshold issue itself has two preliminary considerations. Firstly, the Complainant must in fact possess trademark rights in some mark. *See Brinks Servs. Inc. v. Holt*, FA 324699 (Nat. Arb. Forum Nov. 4, 2004) ("To establish standing under the Policy, a Complainant must prove its acquisition of valid rights in a trademark or service mark."). For purposes of the Policy, no distinction is made between registered and unregistered marks. *See The British Broadcasting Corp. v. Renteria*, D2000-0050 (WIPO March 27, 2000) (the Policy "...does not distinguish between registered and unregistered trademarks and service marks in the context of

abusive registration of domain names" and applying the policy to unregistered trademarks and service marks.).

Secondly, a Complainant must have acquired its trademark rights before the Respondent obtained its domain name. *See Razorbox, Inc. v. Torben Skjodt*, FA 150795 (Nat. Arb. Forum May 9, 2003) ("...Respondent's registration of the <razorbox.com> domain name predates Complainant's alleged rights. Complainant admits in its Complaint that it has been in business for two years and Complainant's trademark application indicates a first use in commerce of January 15, 2002. However, Respondent registered the disputed domain name on December 10, 1999, more than two years prior to Complainant's stated first use in commerce. Under these facts, the Panel must find in favor of Respondent because it would be impossible for Complainant to prove Respondent's bad faith registration subsequent to Complainant establishing any rights in the RAZORBOX mark.").

For purposes of determining whether the threshold of Paragraph 4(a)(i) is met, the comparison is one appropriate to the Internet environment in which users deal with domain names consisting of combinations of alpha-numeric symbols. The comparison is at this surface level and in a simple side by side examination. In order to allow for this side by side comparison, extraneous and generic content is first removed from the subject domain name. *See Nev. State Bank v. Modern Lmited – Cayman Web Development*, FA 204063 (Nat. Arb. Forum Dec. 29, 2003) ("It has been established that the addition of a generic top-level domain is irrelevant when considering whether a domain name is identical or confusingly similar under the Policy." *See also America Online, Inc. v. Chun*, FA 104974 (Nat. Arb. Forum March 22, 2002) ("The mere addition of a generic term to a famous mark as in the instant case does not create a distinct mark capable of overcoming Complainant's claim of identical or confusing similarity.") *See Victoria's Secret et al v. Zuccarini*, FA 95762 (Nat. Arb. Forum November 18, 2000) (finding VICTORIA SECRETS is not a distinct mark and is confusingly similar to VICTORIA SECRETS). *See Cream Pie Club v. Halford*, FA 95235 (Nat. Arb. Forum Aug. 17, 2000) (" The addition of an "s" to the end of the Complainant's [sic] mark does not prevent the likelihood of confusion caused by the use of the remaining identical mark. The two domain names are similar in sound, appearance, and connotation.").

In this matter, Complainant has trademark rights in the trademark HERSHEY by way of United States trademark registration number 1,455,684, issued on September 1, 1987 in connection with hotel facilities, inter alia, and to the mark THE HOTEL HERSHEY through use in commerce dating back to at least 1933 in connection with hotel services (collectively "Complainant's Marks"). Both of these dates are earlier than the date on which Respondent registered its domain name <**hersheyhotels.com**> ("Respondent's Domain Name"), which was on May 3, 1999.

For purposes of comparing Respondent's Domain Name to Complainant's Marks, one must remove the ".com" and the "s" thus leaving the words "hershey hotel." When viewed in this way, this Panel has no difficulty finding that Respondent's Domain Name is either identical or confusingly similar to Complainant's Marks for purposes of the

Policy. These words are a mere reversal of the substantive words of the Complainant's common-law trademark THE HERSHEY HOTEL, and given the sound and cadence of these words, this Panel finds no significant distinction between "hershey hotel" and "hotel hershey." Further, the word "hotel" could also rightly be removed from Respondent's Domain Name as a generic element, in which event the remaining word "hershey" is identical to Complainant's trademark HERSHEY.

As such, Complainant has established this threshold requirement under the Policy.

## Policy Section 4(a)(ii) - Rights or Legitimate Interests

Under the Policy, a Complainant has the initial burden to demonstrate a Respondent's lack of rights or legitimate interests in its domain name. Once this initial burden is carried, and the burden is a light one, it is then incumbent on a Respondent to establish that it does have rights or legitimate interests in its domain names. *See G.D. Searle v. Martin Mktg.*, FA 118277 (Nat. Arb. Forum, Oct. 1, 2002) (holding that where the Complainant has asserted that the Respondent does not have rights or legitimate interests with respect to the domain name, it is incumbent on the Respondent to come forward with concrete evidence rebutting the assertion because this information is "uniquely within the knowledge and control of the Respondent."). *See AOL LLC v. Gerberg*, FA 780200 (Nat. Arb. Forum Sept. 25, 2006) ("Complainant must first make a *prima facie* showing that Respondent does not have rights or legitimate interest in the subject domain names, which burden is light. If Complainant satisfies its burden, then the burden shifts to Respondent to show that it does have rights or legitimate interest in the subject domain names.").

Paragraph 4(c) of the policy provides guidance about what constitutes rights or legitimate interest for purposes of Paragraph 4(a)(ii). Three non-exclusive examples are given, to wit:

  (i)  before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services; or

  (ii)  you...have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

  (iii)  you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or tarnish the trademark or service mark at issue.

This Panel finds that Complainant has established that Respondent has not been commonly known by Respondent's Domain Name and that Respondent's use of Respondent's Domain Name is for commercial purposes, and Respondent has not shown

otherwise. As such, the safe harbors of Paragraphs 4(c)(ii) and 4(c)(iii) are not available to Respondent.

This Panel further finds that Complainant has met its burden and Respondent has not met its burden with respect to Paragraph 4(c)(i), and as such this safe harbor is also unavailable to Respondent. Complainant has shown that Respondent's Domain Name is identical or confusingly similar to Complainant's marks. Complainant has shown that Respondent registered Respondent's Domain Name well after Complaint acquired its trademark rights, and given the geographic proximity of Respondent's hotel to Complainant's hotel, Respondent would necessarily have been aware of Complainant's trademark rights at the time Respondent registered Respondent's Domain Name. Complainant has shown that it and Respondent are both in the business of selling hotel rooms to business and leisure travelers, and Respondent has shown that these hotels operate in the same geographic market area, and as such that the parties are competitors.

Respondent argues that the parties are _not_ competitors because they cater to different market segments; Respondent operates a 2-star hotel and Complainant operates a luxury hotel. However, this Panel is not persuaded that this difference in target customers is sufficient to require a finding that the parties are not competitors for purpose of the Policy. As useful as the concept of target customers can be to a business, this concept does not in fact imposes upon reality a neat division. As a matter of practical experience it is more correct to define a continuum of prospective customers along an economic scale, and in this sense Internet users who are looking for lodging in any given geographic area, such as here, are one group, not two or more.

As such, this Panel finds that Respondent's conduct is inconsistent with a finding that it has engaged in a *bona fide* offering of services. *See America Online, Inc. v. Fu*, D2000-1374 (WIPO Dec. 12, 2000) ("it would be unconscionable to find a *bona fide* offering of services in a Respondent's operation of a website using a domain name which is confusingly similar to Complainant's mark and for the same business."). *See also Pfizer, Inc. v. Internet Gambiano Prods.*, D2002-0325 (WIPO June 20, 2002)(finding that because the VIAGRA mark was clearly well-known at the time of the Respondent's registration of the domain name it can be inferred that the Respondent is attempting to capitalize on the confusion created by the domain name's similarity to the mark); *see also MBS Computers Ltd. v. Workman*, FA 96632 (Nat. Arb. Forum Mar. 16, 2001) (finding no rights or legitimate interests when the Respondent is using a domain name identical to the Complainant's mark and is offering similar services).

The Complainant has established that Respondent has no rights or legitimate interests in respect of the domain name.

## Registration and Use in Bad Faith

Paragraph 4(b) of the Policy provides guidance about what sort of conduct constitutes bad faith conduct for purposes of Paragraph 4(a)(iii) of the Policy. Paragraph 4(b) provides four non-exclusive examples of bad faith conduct, to wit:

(i)    circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the Complainant who is the owner of the trademark or service mark or to a competitor of that Complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name; or

(ii)   you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that your have engage in a pattern of such conduct;

(iii)  you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv)   by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to you web site or other on-line location, by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship, affiliation, or endorsement of your website or location or of a product or service on you website or location.

This Panel finds that Complainant has not established that Respondent acquired Respondent's Domain Name primarily for the purpose of selling, renting, or otherwise transferring the domain name to Complainant. Further, Complainant has not established that Respondent registered the domain name in order to prevent Complainant from reflecting Complainant's Mark in a corresponding domain name; Complainant has registered the <hersheyhotel.com> domain name. Further still, Complainant has not established that Respondent registered the domain name primarily for the purpose of disrupting the business of a competitor. As such, this Panel finds that Complainant has not established bad faith under Paragraphs 4(b)(i), 4(b)(ii) or 4(b)(iii).

However, this Panel does find that Complainant has established that by using Respondent's Domain Name, Respondent has intentionally attempted to attract, for commercial gain, Internet users to its website by creating a likelihood of confusion with Complainant's Mark as to the source, sponsorship, affiliation, or endorsement of Respondent's website.

Respondent's Domain Name directs to a website for Respondent's hotel. The clear purpose and intent of Respondent's Domain Name is to attract Internet users to the website in order to promote Respondent's hotel. And, nothing in the facts of this matter suggests that Respondent's hotel is anything other than a commercial enterprise.

This Panel finds that Respondent's Domain Name does create the likelihood of confusion with Complaint's Mark as to source, sponsorship, affiliation or endorsement. Respondent's Domain Name is <hersheyhotels.com>. This Panel believes that this domain name is ambiguous in the impression it creates. The first impression is, as Respondent asserts, a reference to hotels in the Hershey, Pennsylvania, geographic area. The second impression is that the Hershey Company has a line of hotels and Respondent's hotel is one of them, along with THE HERSHEY HOTEL. This Panel cannot know how many Internet users would understand the first meaning or the second, but this Panel believes that the number of Internet users who would understand the second meaning is not insignificant. As such, at least for a not insignificant number of Internet users the standard is met as to the creation of a likelihood of confusion.

Respondent argues that its conduct does not fall within the scope of Paragraph 4(b)(iv) because its actual, demonstrable intent was and has always been to apply a neutral, company-wide policy with respect to the creation of domain names. This neutral, company-wide policy was to concatenate the word "hotels" with the name of the geographic area in which each of its hotels was located. As such, Respondent's intent in using the word "hershey" was in the geographic sense and not as reference to Complainant's Marks. However, this argument misses the mark. The relevant intent for purposes of Paragraph 4(b)(iv) is as to "...attract[ing] Internet users to the website...", and not as to "...creating a likelihood of confusion..." As such, Respondent may not have intentionally created a likelihood of confusion, but may still be found to have acted in bad faith if the actual effect of its attempt to attract Internet users is to create a likelihood of confusion, and this Panel so finds.

This Panels finds that Respondent's conduct would not fall within the scope of Paragraph 4(b)(iv) if Complainant's Marks had lost their trademark status and the word "hershey" had become a generic place name. The parties spend considerable time in their papers discussing whether Hershey, Pennsylvania is or is not an actual place name and whether or not Respondent's hotel is inside or outside of this geographic place. For this Panel's purposes with respect to the analysis of Paragraph 4(b)(iv), these discussions are not on point. It would be relevant if the Complainant's Marks had become generic, but Respondent has not established that this has happened.

Even if the requisite intent under Paragraph 4(b)(iv) related to the creation of a likelihood of confusion, this Panel would find the requisite intent. This is because in this unusual situation where the word "hershey" is both a place name and a trademark, Respondent is not free to ignore the trademark status of the word. In this Panel's view, Respondent could have selected any number of other domain names that would have invoked the generic geographic meaning of the word and at the same time would have avoided a likelihood of confusion as to Complainant's Marks. Because this would have been easy, because Respondent could not have been unaware of Complainant's trademark rights (being located in the same, close geographic area), and because Respondent did not do so, this Panel would infer the intent to create a likelihood of confusion.

Complainant has established that Respondent's Domain Name was registered and used in bad faith.

**DECISION**

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **GRANTED**.

Accordingly, it is Ordered that the **<hersheyhotels.com>** domain name be **transferred** from Respondent to Complainant.

Kendall C. Reed, Esq.
Arbitrator

G. Gervaise Davis, III, the Honorable Nelson A. Diaz, and Kendall C. Reed, Panelists
Dated: March 20, 2007

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page

**NATIONAL ARBITRATION FORUM**

# EXHIBIT F

**Radisson Hotel Harrisburg Hershey**

1150 Camp Hill Bypass, Camp Hill Pennsylvania
17011, US
**Reservations:** 1-800-395-7046 US/Canada Toll-free
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

Map & Directions

Photo Gallery

Print Page

Send to a Friend

Add to my favorites list

Overview   Rooms   Services   Groups & Meetings   Dining   Local Area   **Specials**   Weddings

**Special Offers**



**Camp Hill
Vacation Packages**

**Camp Hill, PA Civil War Package**
Stay at the Radisson while visiting the Civil War Museum



**Camp Hill, PA Civil
War Package**

**FEDROOMS**

**Fedrooms Program
Member Serving US
Federal Government
Travelers**



Rooms & Amenities

**100% non-smoking facility**

**Spacious, Pet Friendly Harrisburg, PA Hotel Rooms**
The Radisson Hotel Harrisburg Hershey features two levels of beautifully decorated guest rooms including six suites. Many of our rooms include Sleep Number® beds, which adjust to your level of comfort. In-room amenities include complimentary wireless Internet access, cable television and coffee makers. Traveling with a pet? We also offer pet friendly accommodations.

Rates & Availability
Rooms & Amenities
○ The Business Class Guest Room
○ Sleep Number® Beds
○ Suites
○ Short Stature Kit

**Our Harrisburg, PA hotel rooms include the following amenities:**

- Clock radio
- Coffee maker
- Cribs available upon request
- Dual phone lines and voicemail
- Hair dryer
- Handicap accessible rooms available
- High-speed, wireless Internet access - complimentary
- Iron/ironing board
- Pets allowed
- Remote-controlled color television with cable and pay-per-view movies
- Rollaway beds available upon request
- Room service available 6:30am-11pm
- Self-controlled heating and cooling
- Short stature accessibility kit available
- Sleep Number® beds available
- Smoke-free atmosphere
- Suites available
- *USA Today* delivered to your door Mon-Fri
- Work desk and chair

Standard rooms at our Harrisburg, PA hotel offer a choice of one king-sized bed or two double beds. Many of our guest rooms offer Sleep Number® beds.

**Business Class**
Our Business Class guest rooms offer access to upgraded amenities, services and benefits that help you work more efficiently.



Bed in Suite



Presidential Suite



Guest Room



Groups & Meetings

**Book Our Camp Hill Hotel's Meeting Facilities**
At the Radisson Hotel Harrisburg Hershey, we offer more than 30,000 square feet of exceptional meeting and banquet space. Our Camp Hill hotel's 15,000-square-foot Grand Ballroom is central Pennsylvania's largest column-free oval ballroom, and our 16 meeting rooms can host events of up to 1,200 people. Our professional catering and event planning staff is available to help oversee every detail of your meeting.

**The Radisson Hotel Harrisburg Hershey offers the following meeting amenities:**

- Audio/visual equipment available for rent, including LCD projector
- Catering available
- High-speed, hard-wired Internet access available for $100 for the first computer and $75 for each additional computer per day
- High-speed, wireless Internet access available for $50 per computer per day

For more information on our Camp Hill hotel's meeting facilities, please contact our sales and catering staff at (717) 433-9737 or sales@radpenn.com.

Rates &
Availability
Groups &
Meetings
o Event
Request

o Banquet
Menus

o Meeting
Facility
Floorplan


Presidential Suite


Keystone E


Grand Ballroom

# EXHIBIT G

**Radisson Hotel Harrisburg Hershey**

1150 Camp Hill Bypass, Camp Hill Pennsylvania
17011, US
**Reservations:** 1-800-395-7046 US/Canada Toll-free
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

🚗 Map & Directions
📷 Photo Gallery

🖨 Print Page
✉ Send to a Friend
➕ Add to my favorites list

**Special Offers**



**Camp Hill, PA Civil War Package**



**Executive Special in Harrisburg, PA**

**Overview    Rooms    Services    Groups & Meetings    Dining    Local Area    Specials    Weddings**



**Check Rates & Availability**

Check-in Date:          Check-out Date:
mm/dd/yyyy 📅          mm/dd/yyyy 📅

Rooms:      Adults:    Children:
1             1    1       0

**More Search Options**          Get Rooms & Rates

The best online rates  GUARANTEED

**New Business Class Guestroom**

Downtown Harrisburg  | 1 | 2 | 3 | 4 | Pause

---

**100% non-smoking facility**

**Welcome to Our Harrisburg Hotel**
One of the most convenient hotels in Harrisburg, PA, the
Radisson Hotel Harrisburg Hershey is located in Camp Hill, near
downtown Harrisburg and Harrisburg International Airport, and
offers easy access to Hershey's Chocolate World® in Hershey,
as well as fun recreational facilities at City Island, a popular
Harrisburg park. Our Harrisburg hotel's guests can relax in our
outdoor pool, work out in our Fitness Center, stay connected to
the office with our Business Center and enjoy on-site dining.
Choose our Harrisburg, PA hotel and experience what 100%
guest satisfaction really means.

**Current Weather For CAMP HILL**

☁ Friday
Afternoon clouds.
Cold.
31°F / 14°F

**3-day Forecast
Convert to Celsius**

**Hotel Rewards Program**

goldpoints

Earn free nights and
exclusive privileges at over
1,000 hotels.
**Learn More**



Rooms >
**Rest Well in Our Harrisburg Hotel Rooms**
Our spacious, pet-friendly Harrisburg
hotel rooms and suites feature such
welcome amenities as complimentary
high-speed, wireless Internet access,
coffee makers and irons/ironing boards.
Many rooms also include Sleep
Number® beds. For added
convenience, our entire Camp Hill hotel
is smoke-free.



Services >
**Stay at One of the Top Hotels in Harrisburg, PA**
Our guests can enjoy a variety of
amenities, including a on-site Fitness
Center, outdoor swimming pool and
recreational facilities on the
surrounding wooded grounds. Our
Harrisburg hotel's amenities also
include complimentary wireless
Internet, a 24-hour Business Center
and free airport shuttle service.



Groups & Meetings >
**Host Your Event at Our Camp Hill Hotel**
Ideal for meetings and social events,
our Harrisburg hotel features a 30,000-
square-foot convention center with
flexible meeting space. Our Harrisburg,
PA hotel also boasts the Grand
Ballroom, central Pennsylvania's largest

column-free oval ballroom, and we offer catering and audio/visual rentals.



### Dining >
**Dine at Our Harrisburg Hotel's Restaurants**
Be sure to take advantage of the on-site dining at our Camp Hill hotel. Our on-site restaurant, Bridges Café, serves American cuisine for breakfast, lunch and dinner. Guests at our Harrisburg hotel can also enjoy their favorite beverages and a daily Happy Hour at Bridges Lounge. Room service is available.



### Local Area >
**Visit Our Harrisburg, PA Hotel near HersheyPark**
Our Camp Hill hotel is only five minutes from downtown Harrisburg and offers free airport shuttle service to Harrisburg International Airport (HIA). We are near shopping, golf courses, the National Civil War Museum, Gettysburg battlefields, Dutch Wonderland, Indian Echo Caverns, City Island and other attractions in Harrisburg, PA. Hotel guests are also minutes away from Hershey's Chocolate World® and HersheyPark.



### Weddings >
**Choose the Radisson for Your Harrisburg Wedding**
Let the Radisson Hotel Harrisburg Hershey help make your wedding day unforgettable. When you host your wedding at the Radisson, you will enjoy personalized service from our catering and events staff, overnight accommodations, fresh floral centerpieces and more. Call (717) 433-9737 to arrange a site visit.

## Find Offers

**By Location:**
Country:
United States

State/Province:
Pennsylvania

**By Date:**
Check-in:
mm/dd/yyyy

Check-out:
mm/dd/yyyy

**By Interest:**
☑ Amusement Parks
☑ Entertainment
☐ Holiday
☐ Love & Romance
☐ Outdoors
☐ Shopping
☐ Spa & Relaxation
☐ Sporting Activities
☐ Tours & Sightseeing

Find

## Hotel Deals & Packages

### Search Results                                          1


**Visit Leonardo da Vinci's Workshop in Philadelphia, PA**
See Genius on Display!


**Executive Special in Harrisburg, PA**
Enjoy a room, dinner and breakfast at Radisson Hotel Harrisburg Hershey!


**Pet Friendly**
Pamper your best friend at the Radisson Plaza Warwick - Philadelphia, PA


**Philadelphia, PA Welcomes Buyers Market**
And Radisson Plaza-Warwick extends a special rate for artists and buyers!


**See, Shop, Stay and Enjoy Philadelphia, PA**
At the beautiful Rittenhouse Square Radisson Plaza Warwick


**Funny Bone Dinner Package in Pittsburgh, PA**
Radisson Hotel Pittsburgh - Green Tree


**Funny Bone Show Package in Pittsburgh, PA**
Radisson Hotel Pittsburgh - Green Tree


**Come see Cleopatra in Philly**
The Radisson Warwick has your tickets to see Cleopatra in Philadelphia, PA


**Station Excursion Package**
Stay at the Radisson in Scranton, PA and tour Steamtown Park

**Party at Ice Night Club**
Radisson Hotel Valley Forge

1

**Radisson Hotel Harrisburg Hershey**

1150 Camp Hill Bypass, Camp Hill Pennsylvania
17011, US
**Reservations:** 1-800-395-7046 US/Canada Toll-free
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

**Map & Directions**

**Photo Gallery**

**Print Page**

**Send to a Friend**

**Add to my favorites list**

Overview   Rooms   Services   **Groups & Meetings**   Dining   **Local Area**   **Specials**   Weddings

## Executive Special in Harrisburg, PA

### Enjoy a room, dinner and breakfast at Radisson Hotel Harrisburg Hershey!

**The Executive Special includes:**

- Overnight accommodations featuring complimentary wireless Internet
- Dinner credit for $25 per person (up to two people) including tax and gratuity (excludes alcohol)
- Breakfast credit of $10 per person (up to two people) including tax and gratuity

View our delicious, convenient, on-site **dining options**.

**Terms and Conditions**

No additional coupons or other offers valid with this package.

**Back to Previous Page**   **View More Offers**



**Check Rates & Availability**

Rate:

Select Rate...

Check-in Date:          Check-out Date:

Rooms:          Adults:          Children:
1                  1: 1                0

Go

The best online rates GUARANTEED

**Radisson Hotel Harrisburg Hershey**

1150 Camp Hill Bypass, Camp Hill Pennsylvania
17011, US
**Reservations:** 1-800-395-7046 US/Canada Toll-free
**Telephone:** (717) 763-7117 **Fax:** (717) 763-7120
**Email:** sales@radpenn.com

Map &
Directions

Photo Gallery

Print Page

Send to a Friend

Add to my favorites
list

**Special Offers**



**Fedrooms Program
Member Serving US
Federal Government
Travelers**



**Executive Special in
Harrisburg, PA**





**New Business Class
Guestroom**

| Overview | Rooms | Services | Groups & Meetings | Dining | Local Area | Specials | Weddings |

Rates & Availability

**VIRTUAL CONCIERGE**
powered by 10Best

**BROWSE:**

**Category**

**Attractions (6)**
**Events (1)**
**Nightlife (3)**
**Restaurants (4)**
**Shopping (3)**
**Yellow Page Information (16)**


Downtown Harrisburg


Harrisburg Shopping


Harrisburg Airport

**Harrisburg Hotel in Camp Hill near HersheyPark**
The Radisson is located on Route 15, six miles north of the Pennsylvania Turnpike, and provides easy access to Harrisburg International Airport (HIA), area attractions, shopping, parks and more. Our suburban Harrisburg hotel is also convenient to downtown, Hershey's Chocolate World®, HersheyPark and five public, 18-hole golf courses. We are also less than an hour from Gettysburg and Lancaster Amish Country.

**Our Harrisburg hotel in Camp Hill is convenient to the following attractions:**

- **Allenberry Playhouse** (17.7 miles)
  Catch one of your favorite shows at this local theater.
  Phone: (800) 430-5468
- **Armitage Golf Club** (4.5 miles)
  This award-winning golf course is the perfect spot for travelers who can't go without their tee time.
  Phone: (717) 737-5344
- **Capital City Mall** (3.2 miles)
  Enjoy shopping at great stores like Forever 21 and Hollister at this mall, just minutes from our Camp Hill hotel.
  Phone: (717) 737-1578
- **City Island Park** (2.1 miles)
  From watching a minor-league baseball game to taking a trip down the river in the Pride of the Susquehanna riverboat, you and your family can do it all at this Harrisburg park.
  Phone: (717) 255-3020
- **Fort Hunter Mansion and Park** (8.8 miles)
  First settled in the eighteenth century, Fort Hunter is a fascinating place to learn a little bit of history.
  Phone: (717) 599-5751
- **Hershey's Chocolate World®** (16 miles)
  Don't miss the chance to see how your favorite chocolate is made on the Chocolate Tour.
  Phone: (717) 534-4900
- **Hollywood Casino** (25.3 miles)
  Try your luck at this local casino, which features over 2,300 slot machines and table games.
- **National Civil War Museum** (4.6 miles)
  Visit the most extensive Civil War museum in the country, with artifacts that date from 1850 to 1876.
  Phone: (717) 260-1861
- **Pennsylvania State Capitol** (2.5 miles)
  Tour Pennsylvania's capitol building and find out more about the state's legislative history.
  Phone: (800) TOUR N PA
- **State Museum of Pennsylvania** (2.2 miles)
  Discover Pennsylvania's past and present at this Harrisburg museum.
  Phone: (717) 787-4980

**Nearby Services:**

- **Harrisburg International Airport (HIA)** (13.4 miles)
  Our hotel provides easy access to Harrisburg International Airport (HIA) and offers free airport shuttle service.

**About Harrisburg**

Since 1812, the city of Harrisburg has been the state capital of Pennsylvania. The state capital building creates one of the most beautiful skylines in the country, adding to the city's charm. Harrisburg has played a large part in the history of the United States from its contributions to the Underground Railroad and Industrial Revolution, to its role in the Civil War as a training site for the Union Army. Harrisburg's close proximity to Hershey, PA and its many attractions has made the city a popular stop for tourists visiting the area. Nearby attractions include Hershey Park, ZooAmerica, and Riverfront Park - just to name a few. Harrisburg boasts a wealth of professional theatre and musical productions as well as many galleries and museums, making it a cultural center for the state. Additionally, the downtown area of the city is known for its exciting clubs and delicious restaurants. Don't miss your chance to experience the friendly people, exciting attractions, and rich history of Harrisburg, Pennsylvania.

**Did you know?**

Lots of little children dream of becoming firefighters, and Harrisburg offers a great way to view the history of the occupation. The Fire Museum of Great Harrisburg houses the only working Gamewell Alarm System in the nation. It's the kind that used a call box on the street, and people pulled the handle on it to report a fire.

**Nearby Attractions**

**Indian Echo Caverns**

**Harrisburg Symphony Orchestra**

**Hershey Bears**

**Hershey Museum**

**PA Renaissance Fair**

**Pride of the Susquehanna**

**River Side Stadium/Harrisburg Senators**

**Ski Roundtop**

**Strawberry Square**

**Zoo America**

**Current Weather For CAMP HILL**

Friday Afternoon clouds. Cold. 31°F/ 14°F

**3-day Forecast Convert to Celsius**

```
Court Name: District Court
Division: 1
Receipt Number: 111009875
Cashier ID: pwarner
Transaction Date: 06/17/2011
Payer Name: MCNEES WLLACE AND NURICK
----------------------------------
CIVIL FILING FEE
 For: MCNEES WLLACE AND NURICK
 Case/Party: D-PAM-1-11-CV-001159-001
 Amount:       $350.00
----------------------------------
CHECK
 Check/Money Order Num: 202445
 Amt Tendered: $350.00
----------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:    $0.00

Only when bank clears the check or
verifies credit of funds is the fee
or debt officially paid or
discharged. A fee of $45.00 will be
charged for returned checks.
```